IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CR 13-664-JB |
| | ) | |
| JOSE ISRAEL VILLABA, | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT JOSE ISRAEL VILLABA'S SENTENCING MEMORANDUM,
MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE
AND FORMAL OBJECTION TO PRESENTENCE REPORT**

---

Defendant Jose Israel Villaba , by and through his counsel of record, B.J. Crow of Crow Law Firm, hereby files his sentencing memorandum, motion for downward departure and/or variance and formal objection to the presentence report, and respectfully requests this Court accept the plea agreement and sentence him to 60 months imprisonment.  In support, Mr. Villaba states as follows.

                1.   <u>Facts about Jose Israel Villaba.</u>

Jose Villaba was born to Israel Villaba, age 73, and Maria Socorro Cruz, age 67.  Mr. Villaba was born in Ashton, Idaho.  He has six sisters and his sister Norma is very supportive of him.  Norma is in contact with counsel for Jose on a weekly basis.  Jose's father was not supportive or faithful to his mother and Jose has at least 20 half-siblings.  He did not have a good relationship with his father as such.  When Jose relocated to live with his sister, Jose was introduced to drugs by her husband.  Jose's parent are in very bad health and they have taken his arrest very hard.  Jose and his siblings had a hard childhood because of their father's

abandonment.  Jose had to grow up without a father figure and has not had a chance to rehabilitate his drug addiction.

Mr. Villaba's drug abuse began at a very early age.  He began drinking and smoking marijuana at 14 and experimented with cocaine and mushrooms.  He began smoking methamphetamine at 14 and continued until his arrest.  Mr. Villaba has indicated that he wants help with his addictions, which he has not had the opportunity to do.  Jose has previously been diagnosed with depression, anxiety and bipolar disorder.  He has attempted suicide before.  However, he has never undergone psychiatric treatment.  Jose is currently on medication to treat his depression and mental issues.  Records received from the Idaho Department of Corrections confirm Jose's bipolar disorder.  In sum, due to Jose's abandonment by his father and introduction to drugs by his uncle, he has not had much of a chance.  Jose has accepted responsibility and pled guilty to possession with the intent to distribute more than 50 grams of a substance containing methamphetamine.  Information provided from the U.S. Attorney's office indicates he was nothing more than a mere courier and therefore a minor participant adjustment applies.

2.  Law.

Pursuant to 18 U.S.C. § 3553(b), this Honorable Court has the discretion to depart downwards where there are mitigating factors specific to the facts of the particular case. *See,* 18 U.S.C. § 3553(b).  It is well settled that appellate courts review a district court's sentencing decisions solely for abuse of discretion. *United States v. Smart*, 518 F.3d 800 (10th Cir. 2008). "The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent they are applicable, recognizing that imprisonment is not

an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). "It has

been uniform and constant in the federal judicial tradition for the sentencing judge to consider

every convicted person as an individual and every case as a unique study in the human failings

that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. *Gall v.*

*United States*, 128 S. Ct. 586, 598 (2007), *quoting*, *Koon v. United States*, 518 U.S. 81, 113

(1996). The district court must consider all reasons why a Guideline sentence "fails to properly

reflect Section 3553(a) considerations, or perhaps [that] the case warrants a different sentence

regardless." *Rita*, at 2456. The district court cannot presume that the Guidelines range applies to

any particular case. *Id.*

> The sentencing Court "shall impose a sentence sufficient, but not greater than necessary,

to comply with [the purposes of sentencing]". 18 U.S.C. § 3553(a). Section 3553(a) provides

that in determining the applicable sentence, the court shall consider:

1. the nature and circumstances of the offense and the history and characteristics of
   the defendant;
2. the need for the sentence imposed—
   A. to reflect the seriousness of the offense, to promote respect for the law,
      and to provide just punishment for the offense;
   B. to afford adequate deterrence to criminal conduct;
   C. to protect the public from further crimes of the defendant; and
   D. to provide the defendant with needed educational or vocational training,
      medical care, or other correctional treatment in the most effective manner;
3. the kinds of sentences available;
4. the kinds of sentence and the sentencing range established in the Federal
   Sentencing Guidelines;
5. any pertinent policy statement issued by the Sentencing Commission;
6. the need to avoid unwarranted sentence disparity; and
7. the need to provide restitution to any victims.

Section 3553(a)(1) requires the sentencing court to consider "the nature and circumstances of the

offense and the history and characteristics of the defendant" in every case, and the statute trumps

any guideline or policy statement to the contrary. *See, Stinson v. United States*, 508 U.S. 36, 38,

44, 45 (1993); *United States v. LaBonte*, 520 U.S. 751, 757 (1997). In applying "the factors to be considered in imposing a sentence under 18 U.S.C. § 3553(a)(1-7) to this case, there are numerous factors, any one of which would justify a sentence below the advisory guidelines range. Additionally, there are several mitigating factors present in Mr. Villaba's case that warrant a downward departure and/or variance to 60 months. The pretrial services department identified numerous factors in Jose's case that warrant a sentence outside the advisory guideline range.

In *Rita v. United States*, 127 S. Ct. 2456 (2007), *Kimbrough v. United States*, 128 S. Ct. 558 (2007) and *Gall v. United States*, 128 S. Ct. 586 (2007), and also in *Cunningham v. California*, 127 S. Ct. 856 (2007), the Supreme Court gave substantive and procedural import to the *Booker* remedy, making clear that Section 3553(a) is the controlling sentencing law and rejecting the devices that were used after *Booker* to maintain a *de facto* advisory-but-mandatory guideline system. The "Guidelines are only one of the factors to consider when imposing sentence." *Gall*, 128 S. Ct. at 602. The Guidelines, "formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough*, 128 S. Ct. at 564. "The statute, as modified by *Booker*, contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to achieve the goals of sentencing." *Kimbrough*, at 570.

There are a myriad of factors that a court must consider in sentencing--federal sentencing is "a task calling on a district court's unique familiarity with the facts and circumstances of a case and its judgment in balancing a host of incommensurate and disparate considerations, ranging from the degree of the defendant's cooperation and remorse to the need for deterring potential future offenders." *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1201 (10th Cir.

2007).  In *Gall* and *Kimbrough,* the Court rejected mindless uniformity and required that

individualized consideration be given to any particular defendant's case.  The Court recognized

that a "deferential abuse-of-discretion standard could successfully *balance* the need to reduce

*unjustifiable* disparities across the Nation and consider every convicted person as an *individual*."

*Id*. at 598 n.8 (internal quotation marks and citations omitted) (emphasis supplied).  However, by

simply "correctly calculat[ing] and review[ing] the guideline range," a judge "necessarily [gives]

significant weight and consideration to the need to avoid unwarranted disparities."  *Gall*, 128 S.

Ct. at 599.  The Court recognized that unwarranted uniformity is every bit as objectionable as

unwarranted disparity:  "[I]t is perfectly clear that the District Judge . . . also considered the need

to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated."

*Id*. at 600 (emphasis in original).

     "It is important, too, to realize that departures are an important part of the sentencing

process because they offer the opportunity to ameliorate, at least in some aspects, the rigidity of

the Guidelines themselves. District judges, therefore, need not shrink from utilizing departures

when the opportunity presents itself and when circumstances require such action to bring about a

fair and reasonable sentence." *U.S.  v. Gaskill*, 991 F.2d 82, 86 (3rd Cir. 1993). "The Guidelines

are not a straightjacket for district judges." *U.S.  v. Cook*, 938 F.2d 149, 152 (9th Cir. 1991). The

Guidelines "do not require a judge to leave compassion and common sense at the door to the

courtroom." *U.S.  v. Dominguez*, 296 F.3d 192, 196  n.7 (3rd Cir. 2002) (*quoting*, *U.S.  v.

Johnson*, 964 F.2d 124, 125 (2d Cir.1992)).

     3.  <u>Argument.</u>

     Mr. Villaba had a very rough childhood due to the abandonment of his father and his

introduction to drugs by a respected family member, his uncle.  It appears as though, due to

Jose's lack of a father figure, he turned to his uncle for guidance.  Unfortunately, that guidance led to an introduction to drugs and alcohol at the very young age of 14.  At 14, Mr. Villaba was too young to realize that his uncle's ways were not the ways to live his life.  At that very young age, boys seeks to gain acceptance from their father figures.  Jose started doing drugs and alcohol because his uncle was doing drugs and alcohol.  Jose never really had a chance to succeed because he was taught that drugs and alcohol were the norm at age 14.

In addition, it is likely that Jose's traumatic childhood led to his mental disorders.  Mr. Villaba is currently suffering from bipolar disorder and depression and needs help for these conditions.  A very important fact in this case is that Mr. Villaba has never had appropriate treatment for either his drug and alcohol addiction or his mental disorders.  As this Court knows, Bureau of Prisons has programs designed to help offenders with these issues.  Thus, Mr. Villaba respectfully requests a recommendation to BOP that he be enrolled in the 500 hour drug and alcohol treatment program and any psychiatric counseling BOP will offer him.  After he receives this treatment from BOP, his risk for recidivism will go down greatly.

Furthermore, there has been a recent push by the United States Sentencing Commission and Congress to reduce the drug offender guideline ranges.  This is because, 1) the guidelines are too harsh, especially for methamphetamine, 2) the prisons are overcrowded with drug offenders, and 3) it is costing too much to imprison these drug offenders for the lengthy sentences in the drug guidelines.  On January 9, 2014, the United States Sentencing Commission issued a news release titled, "U.S. Sentencing Commission seeks comment on potential reduction to drug trafficking sentences". *See,* Exhibit 1 to Mr. Villaba's motion to continue his sentencing.  The release states that the U.S.S.C. published proposed guideline amendments including a reduction in the sentencing guideline levels for federal drug trafficking offenses. *Id.* at 1.  The Commission

proposes to reduce the level by 2 levels across all drug types contained in U.S.S.G. § 2D1.1. *Id.*
This is evidence of the push to lower the guideline ranges for drug offenders.  The Commission
and Congress realize that these sentences are too harsh.  For all of the foregoing reasons, this
Honorable Court should respectfully grant Mr. Villaba a variance to the mandatory minimum of
60 months.

4.   <u>Mr. Villaba's criminal history is overstated.</u>

Mr. Villaba is a CH III.  Upon review of the presentence report, it is clear that all the
conviction that take him to a CH III are drug and alcohol convictions.  He received 2 points for a
2004 conviction for possession of a controlled substance, 1 point for a DWI in 2006 and 1 point
for unlawful possession of a prescription drug in 2010.  The 4 points put him at the lowest end of
CH III.  Mr. Villaba admits that he has a drug and alcohol problem and he has had it since he
was 14.  He has never been convicted of a crime of violence.  His only convictions are alcohol
related and possession cases.  He has never been convicted of trafficking a controlled substance.
Thus, his 2 convictions for possession and 1 DWI conviction, which result in a CH III, are
respectfully overstated.  This Court should respectfully grant him a downward departure for his
criminal history being overstated. *See, e.g., U.S. v. Reyes*, 8 F.3d 1379 (9th Cir. 1993) (court
upholds downward departure – 210 months to 33 months – from career offender guidelines – in
both offense level and criminal category – where defendant a comparatively minor offender – 6
minor drug and theft priors).

5.   <u>Objection to Presentence Report.</u>

Mr. Villaba formally objects to the award of 2 points for acceptance of responsibility.
Mr. Villaba informally objected to the presentence report and probation filed a response
overruling the objection.  Probation stated that the government would not file the motion for the

third point because, "defendant went to Suppression Hearing and did not timely accept responsibility". *See,* Probation Response dated January 31, 2014.  However, as soon as Mr. Villaba lost the suppression motion, he entered a plea of guilty thereby accepting timely responsibility.  As this Court knows, Mr. Villaba has a Constitutional right to be provided with a defense.  As such, filing a motion to suppress was filed pursuant to Mr. Villaba's Constitutional rights under the Fourth Amendment.  To now not apply the third point because he filed his motion to suppress is unconstitutional.  This reasoning is directly contradictory to the rights afforded to Mr. Villaba under the Constitution.  U.S.S.G. § 3E1.1 application note 6 states in part, "[b]ecause the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing. See section 401(g)(2)(B) of Pub. L. 108-21. The government should not withhold such a motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal".  Such is exactly the case here.  The government is withholding the motion because Mr. Villaba went through a suppression hearing, which was his Constitutional right. *See e.g., United States v. Vance*, 62 F.3d 1152, 1157 (9th Cir. Guam 1995):

> Likewise, the court erred in holding it against Vance that he moved to suppress evidence before pleading guilty. Such a motion is an assertion of a constitutional right, and as we held in *LaPierre*, exercise of a constitutional right cannot be held against a defendant for purposes of the adjustment, although it may reduce the amount of evidence in his favor. *LaPierre*, 998 F.2d at 1468. Timeliness affects both the first two points and the third, U.S.S.G. § 3E1.1, application note 6, but a plea sufficiently in advance of trial so that the government can avoid trial preparation and the court can allocate its resources efficiently is sufficiently timely for all three points. U.S.S.G. § 3E1.1(b)(2). The amount of preparation by a prosecutor, and the amount of court time which must be scheduled, are far greater for a trial than for a motion to suppress.

Promptly after the suppression ruling, Mr. Villaba notified the government of his intent to plea thereby avoiding the government's and this Court's preparation for trial. As such, Mr. Villaba should receive the third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

      6.  <u>Conclusion.</u>

This Honorable Court has considerable discretion in imposing Mr. Villaba's sentence. As outlined herein, there are numerous mitigating factors that warrant a variant sentence below the guideline range to the mandatory minimum of 60 months. Taking into account all of the circumstances, and the sentencing factors in 18 U.S.C. § 3553(a)(1)-(7), including the history and characteristics of Mr. Villaba, the proposed sentence, respectfully, is adequate to punish the offense but not more serious than necessary to serve the underlying sentencing goals. The numerous mitigating factors in this case warrant a variance/departure to 60 months, and the Court would be doing justice by ordering such a sentence. Mr. Villaba has attached numerous character letters to support his position.

WHEREFORE, Defendant Jose Villaba respectfully requests this Court grant his motion for a downward departure and/or variance and to sentence him to 60 months.

                                   Respectfully submitted,

                                   <u>/s/ B.J. Crow</u>
                                   B.J. Crow
                                   Crow Law Firm
                                   400 North Pennsylvania
                                   Roswell, N.M.  88201
                                   (575) 291-0200

I hereby certify that a true and correct copy
of the foregoing was electronically submitted
this 3rd day of February,  2014 to:

Assistant U.S. Attorney Paul Mysliwiec

/s/ B.J. Crow