# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                       No. CR 13-0664 JB

JOSE ISRAEL VILLABA,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Jose Israel Villaba's Sentencing Memorandum, Motion for Downward Departure and/or Variance and Formal Objection to Presentence Report, filed February 3, 2014 (Doc. 69)("Objection"). The Court held sentencing hearings on September 3, 2014, and October 8, 2014. The primary issues are: (i) whether rule 11(f) of the Federal Rules of Criminal Procedure and rule 410 of the Federal Rules of Evidence preclude Defendant Jose Villaba from offering a statement that the Plaintiff United States of America made during plea negotiations; and (ii) whether the United States abused its discretion when it refused to move for a 1-level adjustment[1] of Villaba's offense level for his timely

---

[1] Section 3E1.1(a) provides that the Court can decrease a defendant's offense level by two levels if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Section 3E1.1(b) states:

> If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

acceptance of responsibility under § 3E1.1 of the United States Sentencing Guidelines.  First, because rule 11(f) of the Federal Rules of Criminal Procedure and rule 410 of the Federal Rules of Evidence prohibit the admission of statements made during plea negotiations only when those statements are offered against the defendant, those rules do not bar Villaba from offering the statement that the United States made during plea negotiations.  Second, the United States abused its discretion when it refused to move for a 1-level adjustment of Villaba's offense level under § 3E1.1(b).  Section 3E1.1(b) permits the United States to withhold such a motion only when the defendant forces the United States to prepare for trial; because the United States did not prepare for trial beyond litigating Villaba's suppression motion, it improperly withheld the § 3E1.1(b) motion.  Consequently, the Court sustains the Objection and orders the United States to move for a 1-level adjustment under § 3E1.1(b).

## FACTUAL BACKGROUND

The Court takes its facts from the Presentence Investigation Report, disclosed December 6, 2013 ("PSR"), that the United States Probation Office ("USPO") prepared.  On February 21, 2013, Drug Enforcement Administration agents encountered Villaba at a Greyhound bus station in Albuquerque, New Mexico.  See PSR ¶ 6, at 3.  DEA agents asked Villaba if they could search his luggage, but Villaba declined.  See PSR ¶ 6, at 3.  After subsequent questioning, Villaba allowed the agents to search his luggage.  See PSR ¶ 6, at 3.  During the search, the agents discovered 472.4 grams of methamphetamine concealed inside a packaged fire-truck toy.  See PSR ¶ 6, at 3.  The agents then placed Villaba under arrest.  See PSR ¶ 6, at 3.

---

U.S.S.G. § 3E1.1(b).  The United States, Villaba, and the USPO have referred to the one-level adjustment under § 3E1.1(b) as "awarding the third point for acceptance of responsibility." Objection at 3.  Given that § 3E1.1(b) subtracts one level from a defendant's offense level and does not add any "points," the Court concludes that it is more accurate to refer to an adjustment under § 3E1.1(b) as a "one-level adjustment" rather than "awarding a third point for acceptance of responsibility."

## PROCEDURAL BACKGROUND

On June 11, 2013, Villaba filed a motion to suppress the methamphetamine as the fruit of an unconstitutional search.  See Motion to Suppress, filed June 11, 2013 (Doc. 24)("Motion to Suppress").  The United States filed a ten-page response to the Motion to Suppress on July 2, 2013.  See United States' Response to Defense Motion to Suppress, filed July 2, 2013 (Doc. 30)("Response").  Villaba replied to the Response on July 23, 2013.  See Defendant Jose Israel Villaba's Reply to United States' Response to Defendant's Motion to Suppress (Doc. 30), filed July 23, 2013 (Doc. 35).  Less than a week later, the Court held an evidentiary hearing on the Motion to Suppress that lasted approximately two and a half hours.  See Transcript of Hearing (taken July 29, 2013); Clerk's Minutes Before District Judge James Browning, filed July 29, 2013 (Doc. 37).  On August 21, 2013, the Court issued a Memorandum Opinion and Order denying the Motion to Suppress.  See Memorandum Opinion and Order, filed August 21, 2013 (Doc. 51)("Aug. 21, 2013, MOO").

On October 3, 2013, Villaba pled guilty to possession with intent to distribute fifty grams or more of a mixture and substance containing methamphetamine under 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B).  See Plea Agreement, filed October 3, 2013 (Doc. 62); Clerk's Minutes for Proceedings Held Before Magistrate Judge Lorenzo F. Garcia, filed October 3, 2013 (Doc. 61).  In the PSR, the USPO gave Villaba a base-offense level of 31.  See PSR ¶ 12, at 4.  The USPO then subtracted 4 levels from Villaba's base-offense level: 2 levels for the minor role that Villaba played in the crime and another 2 levels for Villaba's acceptance of responsibility.  See PSR ¶ 15, at 4; id. ¶ 19, at 5.  The PSR also notes that the United States would not move for an additional 1-level adjustment under § 3E1.1(b), because Villaba forced the United States to litigate the Motion to Suppress before he pled guilty.  See PSR ¶ 20, at 5.

Villaba filed the Objection on February 3, 2014. See Objection at 1. Villaba objects only to the United States' refusal to move for a 1-level adjustment for timely acceptance of responsibility under § 3E1.1(b). See Objection at 8. Villaba argues that he timely accepted responsibility, because he pled guilty as soon as he lost the suppression motion. See Objection at 8. Villaba points out that Application Note 6 of § 3E1.1 states, in pertinent part, that the United States cannot refuse to file a § 3E1.1(b) motion "based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal." Objection at 8 (citation omitted)(internal quotation marks omitted). Villaba says that, similar to his right to appeal, he has a constitutional right to file a suppression motion. See Objection at 8. Villaba reasons that, if the United States cannot withhold a § 3E1.1(b) motion based on his decision to appeal, it cannot withhold the motion based on his decision to litigate the Motion to Suppress. See Objection at 8. In support of this proposition, Villaba cites United States v. Vance, 62 F.3d 1152 (9th Cir. 1995). See Objection at 8. According to Villaba, in United States v. Vance, in an opinion that the Honorable Andrew J. Kleinfeld, United States Circuit Judge for the United States Court of Appeals for the Ninth Circuit, authored, and Judges Thompson and Reinhardt joined, the Ninth Circuit stated:

> [T]he court erred in holding it against Vance that he moved to suppress evidence before pleading guilty. Such a motion is an assertion of a constitutional right, and as we held in LaPierre, exercise of a constitutional right cannot be held against a defendant for purposes of the adjustment, although it may reduce the amount of evidence in his favor. Timeliness affects both the first two points and the third, U.S.S.G. § 3E1.1, application note 6, but a plea sufficiently in advance of trial so that the government can avoid trial preparation and the court can allocate its resources efficiently is sufficiently timely for all three points. The amount of preparation by a prosecutor, and the amount of court time which must be scheduled, are far greater for a trial than for a motion to suppress.

Objection at 8 (citations omitted)(internal quotation marks omitted).

The United States responded to the Objection on February 13, 2014.  See United States' Sentencing Memorandum, filed February 13, 2014 (Doc. 72)("Memo.").  The United States asks the Court to overrule the Objection for three reasons.  See Memo. at 2-3.  First, the United States addresses Villaba's argument that it cannot withhold a § 3E1.1(b) motion because he has a constitutional right to file a motion to suppress.  See Memo. at 2.  The United States counters that Villaba also has a constitutional right to go to trial, but it is "beyond dispute" that if Villaba were found guilty at trial, he would not be entitled to the adjustment.  Memo. at 2.

Second, the United States argues that it is not withholding the § 3E1.1(b) motion "based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal."  Memo. at 2 (citations omitted)(internal quotation marks omitted).  The United States points out that Villaba was allowed to enter a conditional plea that preserved his right to appeal the Court's decision on his Motion to Suppress.  See Memo. at 2.  The United States argues that it is not withholding the § 3E1.1(b0 motion "specifically for reasons enumerated in § 3E1.1, namely Defendant's failure to plead guilty in a timely fashion that allowed the United States to avoid extensive trial preparation."  Memo. at 3.

Third, the United States says that the cases[2] which Villaba cites in the Objection are unpersuasive, because they apply a version of the Sentencing Guidelines that is no longer in effect.  See Memo. at 3.  The United States argues that, when those cases were decided, whether to award an adjustment under § 3E1.1(b) was left to the sentencing judge's discretion.  See Memo. at 3.  By contrast, the United States explains, the current version of § 3E1.1(b) requires a

---

[2]The United States contends that Villaba cited United States v. Vance and "might also have cited" United States v. Marquez, 337 F.3d 1203 (10th Cir. 2003) in the Objection.  Memo. at 3.  The Court notes, however, that Villaba cited only United States v. Vance in the Objection.

motion from the United States for the defendant to receive the adjustment.  See Memo. at 3.  The

United States asserts that, consequently,

> not only is there no current law requiring the United States to file motions for the
> benefit of a Defendant who has caused the United States to have to prepare for
> trial, according to the United States in its executive discretion, but Congress,
> through the Sentencing Commission, specifically changed the rule so that it would
> be up to the government to decide whether to file that motion.

Memo. at 3.

The USPO responded to the Objection on September 3, 2014.  See Addendum to the

PSR, disclosed September 3, 2014 ("Addendum").  The USPO states:

> Pursuant to USSG § 3E1.1(b), the third point for acceptance of
> responsibility is granted upon the motion of the Government after the defendant
> has assisted authorities in the investigation or prosecution of his own misconduct
> by timely notifying authorities of his intention to enter a plea of guilty, thereby,
> permitting the Government to avoid preparing for trial and permitting the
> Government and the Court to allocate their resources efficiently.  Prior to the
> disclosure of the presentence report the Government advised the third point for
> acceptance of responsibility would not apply in this case as the defendant went to
> a Suppression Hearing and did not timely accept responsibility.

Addendum at 2.

The Court held a sentencing hearing on the same day that the USPO responded to the

Objection.  See Transcript of Hearing (taken Sept. 3, 2014)("Sept. 3, 2014, Tr.").[3]  At the

hearing, the parties largely reiterated their arguments from the briefing.  See Sept. 3, 2014, Tr. at

3:8-15:10 (Court, Crow, Barth).  Villaba challenged the United States' assertion in the Memo.

that it was withholding the adjustment motion "specifically for the reasons enumerated in

§ 3E1.1, namely Defendant's failure to plead guilty in a timely fashion that allowed the United

States to avoid extensive trial preparation."  Sept. 3, 2014, Tr. at 4:6-11 (Crow)(quoting Memo.

---

[3]The Court's citations to the transcripts of the two hearings refer to the court reporter's
original, unedited versions.  Any final versions may have slightly different page and/or line
numbers.

at 3)(internal quotation marks omitted).  Villaba said that the PSR contradicted this statement because it stated that the United States' would not file a § 3E1.1(b) motion because Villaba litigated the suppression motion.  See Sept. 3, 2014, Tr. at 4:11-15 (Crow)(citing PSR ¶ 20, at 5). Villaba also noted that, during plea negotiations, the United States said in an electronic mail transmission that it would not file a § 3E1.1(b) motion, because Villaba "litigated the only litigable issue in the case."  Sept. 3, 2014, Tr. at 5:25-6:2 (Crow).

Villaba argued that the United States is withholding the motion based on interests not identified in § 3E1.1 -- namely, punishing Villaba for forcing the United States to litigate his motion to suppress.  See Sept. 3, 2014, Tr. at 5:18-25 (Crow).  In Villaba's view, the United States could withhold the adjustment only if he had forced the United States to prepare for trial -- which he did not do.  See Sept. 3, 2014, Tr. at 6:13-16 (Crow).  Villaba points out that the United States did not file any proposed jury instructions, voir dire questions, witness or exhibit lists. See Sept. 3, 2014, Tr. at 6:13-16 (Crow).  Villaba also explains that he pled guilty approximately one month after losing his suppression motion -- thus allowing the United States to avoid preparing for trial.  See Sept. 3, 2014, Tr. at 7:1-18 (Crow).  The United States responded that there are a lot of resources that go into litigating suppression motions and that it has always viewed the timely acceptance of responsibility adjustment as going to defendants that plead guilty early enough for the United States to avoid litigating a suppression motion and going to trial.  See Sept. 3, 2014, Tr. at 11:20-12:6 (Barth).

The Court asked Villaba whether he had a copy of the electronic mail transmission from the United States that contained the statement to which he had referred.  See Sept. 3, 2014, Tr. at 7:19-20 (Court).  The United States argued that the Court could not consider the statements in the transmission because they were made during plea negotiations.  See Sept. 3, 2014, Tr. at

8:13-17 (Barth).  The Court asked Villaba to forward the transmission to the Court's deputy, Ms. K'Aun Wild.  <u>See</u> Sept. 3, 2014, Tr. at 14:3-5 (Court, Crow).  The Court said that it would have to take some time to: (i) rule on the Objection; and (ii) determine whether it could consider the statements made in the electronic mail transmission in ruling on the Objection.  <u>See</u> Sept. 3, 2014, Tr. at 14:5-11 (Court).

After the hearing, Villaba sent the Court the electronic mail transmission that contained the United States' statements.  <u>See</u> Electronic Mail Transmission from Paul Mysliwiec, Assistant United States Attorney, United States Attorney's Office for the District of New Mexico, to B.J. Crow, Villaba's attorney (dated Sept. 11, 2013), filed September 3, 2014 (Doc. 82)("Sept. 11, 2013, e-mail").  The Sept. 11, 2013, e-mail states, in pertinent part: "BJ, As I believe I warned, I won't agree to acceptance on a case where the defendant has chosen to litigate the only possible litigable thing."  Sept. 11, 2013, e-mail at 1.

The United States filed a letter on September 5, 2014.  <u>See</u> Letter from Paul Mysliwiec, Assistant United States Attorney, United States Attorney's Office for the District of New Mexico, to the Court (dated Sept. 5, 2014), filed September 5, 2014 (Doc. 83)("Sept. 5, 2014, Letter").  In the Sept. 5, 2014, Letter, the United States addresses three issues relating to the Court's resolution of the Objection.  <u>See</u> Letter *passim*.  First, the United States argues that rule 11 of the Federal Rules of Criminal Procedure prohibits the Court from considering its statement in the Sept. 11, 2013, e-mail.  <u>See</u> Sept. 5, 2014, Letter at 1.  The United States asserts that the policy reason for such a rule is clear: "[B]y using parties' statement or positions in plea negotiations against them, the Court would discourage full and fair plea negotiations, instead encouraging parties to take unreasonable or guarded positions in negotiations that would reduce the effectiveness of the plea bargaining process."  Sept. 5, 2014, Letter at 1.

Second, the United States contends that the United States Court of Appeals for the Tenth Circuit does not prohibit the United States from withholding a § 3E1.1(b) motion where it conducted significant trial preparation while litigating a defendant's suppression motion.  See Sept. 5, 2014, Letter at 1.  The United States points out that Villaba has not cited any case addressing when the United States may file such a motion, but instead has discussed only cases applying a previous version of § 3E1.1(b) that is no longer in effect.  See Sept. 5, 2014, Letter at 1-2.  The United States contends that a recent Tenth Circuit decision speaks to whether and how the Court may review the United States' decision not to file a § 3E1.1(b) motion.  See Sept. 5, 2014, Letter at 2 (citing United States v. Salas, 756 F.3d 1196 (10th Cir. 2014)).  According to the United States, in United States v. Salas, in an opinion that the Honorable Timothy M. Tymkovich, United States Circuit Judge for the Tenth Circuit, authored, and Judges Lucero and Bacharach joined, the Tenth Circuit said that

> although the government's discretion to file a § 3E1.1 motion is broad, it is not unfettered.  A district court may review the government's decision not to file a § 3E1.1 motion and grant a remedy if it finds the refusal was 1) animated by an unconstitutional motive, or 2) not rationally related to a legitimate government end.

Sept. 5, 2014, Letter at 2 (citing United States v. Salas, 756 F.3d at 1204).

According to the United States, the Tenth Circuit has held that an unconstitutional motive is one based on the defendant's race, religion, or gender.  See Sept. 5, 2014, Letter at 2 (citing United States v. Salas, 756 F.3d at 1206).  The United States argues that Villaba has not alleged that it has such a motive in withholding the adjustment motion.  See Sept. 5, 2014, Letter at 2. The United States says that it refuses to file the motion, because Villaba's failure to timely plead guilty caused it to "engage in substantial trial preparation."  Sept. 5, 2014, Letter at 2.

The United States says that, with respect to what constitutes a legitimate government end, the Tenth Circuit noted in United States v. Salas that United States Courts of Appeals have upheld the United States' refusal to move for a § 3E1.1(b) adjustment because the defendant litigated a suppression motion.  See Sept. 5, 2014, Letter at 2 (citing United States v. Salas, 756 F.3d at 1205).  According to the United States, the Tenth Circuit said that "the government's stated reason for refusing to file the § 3E1.1(b) motion -- to avoid litigation and conserve resources -- is rationally related to the legitimate government interest in the efficient allocation of its resources."  Sept. 5, 2014, Letter at 2 (citing United States v. Salas, 756 F.3d at 1205).  The United States also points out that, in United States v. Salas, the Tenth Circuit cited United States v. Drennon, 516 F.3d 160 (3d Cir. 2008), in which the United States Court of Appeals for the Third Circuit held that the United States did not abuse its discretion in refusing to move for a timely acceptance of responsibility adjustment because the defendant did not plead guilty until after the suppression hearing, and the United States said that the "large majority of the work to prepare for trial had been done in connection with the suppression hearing."  Sept. 5, 2014, Letter at 2 (quoting United States v. Salas, 756 F.3d at 1205)(internal quotation marks omitted).

Third, the United States acknowledges that it did not prepare for trial beyond what was necessary to litigate the Motion to Suppress, but argues that it did "the vast majority of the work [it] would need to do prepare for trial" while litigating the Motion to Suppress.  Sept. 5, 2014, Letter at 2-3.  The United States explains:

> The filing of standard drug interdiction jury instructions, the subpoena of the chemist and the filing of an expert notice for the chemist, or other trial preparation pale in comparison to the hours I spent with the police witnesses, their reports, and the video evidence in this case in preparing for the suppression hearing before the Court.  Additionally, the time my supervisor, AUSA Kimberly Brawley, spent preparing for the hearing and attending the hearing with me took her away from her duties supervising over a dozen attorneys and other legal professionals in our office.  The time Task Force Officer Walsh took from his other duties to appear in

court for the suppression hearing could also have been spent elsewhere solving other crimes. Finally, the consultations with the Criminal Chief and other attorneys in the office necessary to make fair and accurate representations regarding the confidential informant involved in the suppression hearing took government resources away from other cases.

Sept. 5, 2014, Letter at 1.

Villaba responded to the Sept. 5, 2014, Letter on October 6, 2014. See Letter from B.J. Crow, Villaba's attorney, to Paul Mysliwiec, Assistant United States Attorney, United States Attorney's Office for the District of New Mexico, to the Court (dated Oct. 7, 2014), filed October 6, 2014 (Doc. 84)("Oct. 7, 2014, Letter"). Villaba tackles two issues in the Oct. 7, 2014, Letter. Oct. 7, 2014, Letter passim. First, he addresses the admissibility of the United States' statement in the electronic mail transmission:

> This Honorable Court is not prohibited by either Fed. R. Crim. P. 11(c)(1) nor Fed. R. Evid. 410 to consider the email during plea negotiations in this matter. Under Fed. R. Crim. P. 11(c)(1), "an attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The Court must not participate in these discussions." The Defendant in this case is not asking the Court to participate in plea discussions. The plea discussions are well over and a plea has been reached. . . . The Defendant is merely asking the Court to consider the email for the sole purpose of the government's reasoning for withholding the third point for acceptance. Furthermore, this Court is not prohibited from considering the email under Fed. R. Evid. 410. Rule 410(a) states in part, "[i]n a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions." This evidence is not being offered against the Defendant.

Oct. 7, 2014, Letter at 1 (citation omitted).

Second, he argues that United States v. Salas is distinguishable because, unlike in that case, where the United States undertook trial preparations after winning the suppression motion, in this case "the government acknowledges that preparing for trial was not the reason for withholding the third point." Oct. 7, 2014, Letter at 2. Villaba states that the United States' only

reason for refusing to file a § 3E1.1(b) motion in this case is because it had to litigate the Motion to Suppress.  See Oct. 7, 2014, Letter at 2.

The Court held a second sentencing hearing on October 8, 2014.  See Transcript of Hearing (taken October 8, 2014)("Oct. 8, 2014, Tr.").  At the hearing, the United States first addressed the Sept. 11, 2013, e-mail.  See Oct. 8, 2014, Tr. at 4:5-5:2 (Henderson).  The United States argued that, when it said that Villaba forced it to ligate the only litigable issue in the case, it meant that litigating the Motion to Suppress  required the United States to do the large majority of the work that it would have done to prepare for trial.  See Oct. 8, 2014, Tr. at 4:5-12 (Henderson).  The Court pointed the United States to Application Note 6 of § 3E1.1 and asked how withholding the timely acceptance of responsibility motion because Villaba litigated the Motion to Suppress is different from withholding the motion because of a defendant's refusal to waive his right to appeal.  See Oct. 8, 2014, Tr. at 6:13-24 (Court).  The United States responded that, when a defendant pleads guilty but preserves his or her right to appeal, the United States does not have to expend resources proving its case.  See Oct. 8, 2014, Tr. at 7:5-7 (Henderson). The United States asserted that, by contrast, when a defendant litigates a suppression motion -- especially in a drug possession case where suppression is the central issue -- the United States does the lion's share of the work that it would have done to prepare for trial to litigate the suppression motion.  See Oct. 8, 2014, Tr. at 7:16-21 (Henderson).

The Court asked the USPO when the Sentencing Commission amended Application Note 6 to include the line that "[t]he government should not withhold [a § 3E1.1(b) motion] based on the interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal."  Oct. 8, 2014, Tr. at 8:9-15 (Court).  The USPO responded that the line was added in the 2013 version of the Sentencing Guidelines.  See Oct. 8, 2014, Tr. at 8:16-18

- 12 -

(Probation Officer[4]); id. at 9:9-16 (Probation Officer).  The Court asked both parties if Villaba told the United States that he would plead guilty if he lost the suppression motion.  See Oct. 8, 2014, Tr. at 10:1-4 (Court); id. at 36:5-10 (Court).  Villaba said that he did not know if he did, see Oct. 8, 2014, Tr. at 10:5-7 (Crow); the United States said that its recollection was that Villaba only began asking for a plea offer after the Court ruled on the suppression motion, see Oct. 8, 2014, Tr. at 36:10-13 (Mysliwiec).

The Court said that it was concerned about relying on the Tenth Circuit's decision in United States v. Salas, because, although it was decided on July 1, 2014, there is no indication that the Tenth Circuit considered the new amendment to Application Note 6 of § 3E1.1 -- Judge Tymkovich neither quotes nor cites it in his opinion.  See Oct. 8, 2014, Tr. at 10:16-25 (Court).  The Court noted that the opinion states that Salas was sentenced in 2013, but does not clarify whether he was sentenced before the amendment went into effect.  See Oct. 8, 2014, Tr. at 11:1-5 (Court).  The Court also pointed out that the Sentencing Commission's explanation for the amendment cites United States v. Lee, 653 F.3d 170 (2d Cir. 2011), and United States v. Divens, 650 F.3d 343 (4th Cir. 2011), which both stated that § 3E1.1 focuses on conserving trial resources, and not appellate resources.  See Oct. 8, 2014, Tr. at 11:1-5 (Court).  The Court said that it could interpret those cases as drawing a distinction between before and after trial; in other words, while the United States could not condition a § 3E1.1(b) motion on a defendant's waiver of appellate rights, it could condition such a motion on any of the defendant's actions leading up to trial.  See Oct. 8, 2014, Tr. at 12:4-10 (Court).  The Court pointed out, however, that the Tenth Circuit did not follow that approach in United States v. Salas.  See Oct. 8, 2014, Tr. at 12:10-12 (Court).  In the Court's view, the Tenth Circuit instead focused on whether the defendant forced

---

[4]The Oct. 8, 2014, Tr. does not identify the United States Probation Officer at the hearing.

the United States to prepare for trial specifically.  See Oct. 8, 2014, Tr. at 12:18-14:5 (Court).

The Court further explained that, based on its reading of United States v. Salas and Application

Note 6, its decision on the Objection turns on whether the United States must prepare for trial

beyond what is necessary to litigate a suppression motion to withhold the timely acceptance of

responsibility motion.  See Oct. 8, 2014, Tr. at 16:2-12 (Court).

     The United States responded that United States v. Salas is not controlling.  See Oct. 8,

2014, Tr. at 20:2 (Mysliwiec).  The United States argued that, in United States v. Salas, the

Tenth Circuit did not need to conclude that the United States could withhold the timely

acceptance of responsibility motion based solely on the defendant litigating a suppression

motion, because Salas forced the United States to do additional trial preparation.  See Oct. 8,

2014, Tr. at 20:2-11 (Mysliwiec)(citation omitted).  The United States contended: "So the Tenth

Circuit hasn't decided that I can do specifically the thing I'm trying to do today and the Tenth

Circuit hasn't decided that . . . I can't do the thing I'm trying to do today under the current

sentencing guidelines."  Oct. 8, 2014, Tr. at 20:11-15 (Mysliwiec).  The United States argued,

however, that the Tenth Circuit suggested in United States v. Salas that it would allow the United

States to withhold the timely acceptance of responsibility motion in this case by citing United

States v. Drennon, in which the Third Circuit upheld the United States' refusal to file a

§ 3E1.1(b) motion where it had done the large majority of the work to prepare for trial while

preparing to litigate the defendant's suppression motion.  See Oct. 8, 2014, Tr. at 32:10-24

(Mysliwiec).

     Addressing the amendment to Application Note 6 of § 3E1.1, the United States said that

"both the right to appeal . . . and an evidentiary hearing after responsibility has been timely

[accepted] are very different from doing the only practical thing that you can do to avoid taking

responsibility" in a drug possession case -- i.e., litigating a suppression motion.  Oct. 8, 2014 Tr. at 30:24-31:4 (Mysliwiec).  The United States explained that, to go to trial after litigating the motion to suppress, it would only have had to: (i) file its expert notice for its chemist; (ii) subpoena the chemist; (iii) file proposed jury instructions; (iv) show up and select a jury; and (v) present the same evidence that it had presented at the suppression hearing.  See Oct. 8, 2014, Tr. at 28:19-29:1 (Mysliwiec).  The United States pointed out that the Tenth Circuit has not explained what the United States need to do beyond preparing for a suppression hearing to have conducted sufficient trial preparation to withhold a § 3E1.1(b) motion.  See Oct. 8, 2014, Tr. at 29:7-13 (Mysliwiec).  The United States argues that, consequently, it had no fair warning that it had to take any steps beyond litigating the suppression motion to withhold the § 3E1.1(b) motion.  See Oct. 8, 2014, Tr. at 31:4-15 (Mysliwiec).

Villaba said that there are two problems with relying on United States v. Drennon.  See Oct. 8, 2014, Tr. at 31:4-15 (Crow).  First, Villaba points out that the Third Circuit decided United States v. Drennon before the Sentencing Commission amended Application Note 6 to § 3E1.1.  See Oct. 8, 2014, Tr. at 35:1-3 (Crow).  Second, Villaba states that the Third Circuit's decision in United States v. Drennon turned on its assumption that the United States has unfettered discretion to withhold a § 3E1.1(b) motion, which is contrary to Tenth Circuit law under which the United States' discretion in withholding such a motion is circumscribed.  See Oct. 8, 2014, Tr. at 35:4-10 (Crow)(citations omitted).

Turning to United States v. Salas, Villaba stated: "[W]hen the Court looks at Salas . . . distinguishing Lee and Divens, all it's talking about is sparing trial resources . . . .  So the Tenth Circuit in Salas focuses on several things that the prosecutor had to do to prepare for trial."  Oct. 8, 2014, Tr. at 35:11-18 (Crow).  Villaba contended that, in this case, the United States did not

take any of the steps that it did in United States v. Salas to prepare for trial after litigating the Motion to Suppress -- e.g., filing jury instructions, a proposed verdict form, or a trial brief.  See Oct. 8, 2014, Tr. at 36:19-24 (Crow).  Villaba argued that there is no evidence that the United States prepared for trial in this case or that the work the United States did on the Motion to Suppress was the lion's share of the work that it would have done for trial.  See Oct. 8, 2014, Tr. at 37:7-8 (Crow); id. at 39:8-13 (Crow).  Villaba continued: "[W]e went through a one hour suppression hearing.[5]  That is not what is required for trial.  We would have to have testimony from the chemist.  We would have motions in limine.  We would have evidentiary hearings . . . it's a lot more than what happened in that motion to suppress."  Oct. 8, 2014, Tr. at 37:10-17 (Crow).

The United States responded that Villaba is not the judge of when it has conducted sufficient trial preparation to withhold a § 3E1.1(b) motion.  See Oct. 8, 2014, Tr. at 39:21-22 (Mysliwiec).  The United States asserted that Congress, through the Sentencing Commission, left it up to the United States to determine when it has conducted sufficient trial preparation to withhold a § 3E1.1(b) motion.  See Oct. 8, 2014, Tr. at 39:18-20 (Mysliwiec).

At the end of the hearing, the Court stated that it thought it could consider the United States' statements in the Sept. 11, 2013, e-mail in ruling on the Objection.  See Oct. 8, 2014, Tr. at 40:17-18 (Court).  The Court said that rule 410 of the Federal Rules of Evidence governs the statements' admissibility and that rule 410 only prevents the Court from being involved in plea negotiations -- which the Court is not attempting to do.  See Oct. 8, 2014, Tr. at 40:17-21 (Court).  The Court also explained that it was prepared to overrule the Objection, because it

---

[5]The courtroom deputy clerk's minutes from the hearing indicate that the suppression hearing lasted approximately two and a half hours.  See Clerk's Minutes Before District Judge James Browning, filed July 29, 2013 (Doc. 37).

thought that <u>United States v. Salas</u> controlled.  <u>See</u> Oct. 8, 2014, Tr. at 40:25-41:3  (Court).  The

Court said that it realized, however, that the Tenth Circuit had not considered the amendment to

Application Note 6 to § 3E1.1 in <u>United States v. Salas</u>.  <u>See</u> Oct. 8, 2014, Tr. at 41:7-12 (Court).

The Court stated that, consequently, it would not be able to rule on the Objection at the hearing

and would instead have to take the matter -- again -- under advisement.  <u>See</u> Oct. 8, 2014, Tr. at

41:11-16 (Court).

## LAW REGARDING REDUCTIONS FOR ACCEPTANCE OF RESPONSIBILITY UNDER U.S.S.G. § 3E1.1

The defendant has the burden of proving by a preponderance of the evidence that he or

she is entitled to a reduction for acceptance of responsibility under § 3E1.1.  See <u>United States v.</u>

<u>Meyers</u>, 95 F.3d 1475, 1486 (10th Cir. 1996); <u>United States v. McMahon</u>, 91 F.3d 1394, 1396-97

(10th Cir. 1996).   The Tenth Circuit reviews "a district court's determination not to grant a

reduction for acceptance of responsibility for clear error."  <u>United States v. Ochoa-Olivas</u>, 426 F.

App'x 612, 613 (10th Cir. 2011)(unpublished)(citing <u>United States v. Hutchinson</u>, 573 F.3d

1011, 1032 (10th Cir. 2009)).   In reviewing the district court's findings, the Tenth Circuit

"remain[s] mindful that '[t]he sentencing judge is in a unique position to evaluate a defendant's

acceptance of responsibility.   For this reason, the determination of the sentencing judge is

entitled to great deference on review.'"   <u>United States v. Ivy</u>, 83 F.3d 1266, 1292-93 (10th Cir.

1996)(quoting U.S.S.G. § 3E1.1, Application Note 5).

Section 3E1.1 provides:

(a)     If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

(b)     If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own

misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S.S.G. § 3E1.1.

The application notes to § 3E1.1 state, in pertinent part:

**2.** This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

. . . .

**5.** The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.

**6.** Subsection (a) provides a 2-level decrease in offense level. Subsection (b) provides an additional 1-level decrease in offense level for a defendant at offense level 16 or greater prior to the operation of subsection (a) who both qualifies for a decrease under subsection (a) and who has assisted authorities in the investigation or prosecution of his own misconduct by taking the steps set forth in subsection (b). The timeliness of the defendant's acceptance of responsibility is a consideration under both subsections, and is context specific. In general, the conduct qualifying for a decrease in offense level under subsection (b) will occur particularly early in the case. For example, to qualify under subsection (b), the defendant must have notified authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently.

Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for

trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing.  See section 401(g)(2)(B) of Pub. L. 108-21.  The government should not withhold such a motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal.

If the government files such a motion, and the court in deciding whether to grant the motion also determines that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, the court should grant the motion.

Application Notes to § 3E1.1.

The Sentencing Commission added the following line to the end of the second paragraph of Application Note 6 to § 3E1.1 of the Sentencing Guidelines that went into effect on November 1, 2013: "The government should not withhold such a motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal."  Amendment 775 at 1, Supplement to Appendix C, U.S.S.G. (effective November 1, 2013)("Amendment 775").  The Sentencing Commission explained that the amendment resolved a circuit conflict regarding for what reasons the United State could withhold a § 3E1.1(b) motion:

The first circuit conflict involves the government's discretion under subsection (b) and, in particular, whether the government may withhold a motion based on an interest not identified in § 3E1.1, such as the defendant's refusal to waive his right to appeal.

Several circuits have held that a defendant's refusal to sign an appellate waiver is a legitimate reason for the government to withhold a § 3E1.1(b) motion. See, e.g., United States v. Johnson, 581 F.3d 994, 1002 (9th Cir. 2009)(holding that "allocation and expenditure of prosecutorial resources for the purposes of defending an appeal is a rational basis" for such refusal); United States v. Deberry, 576 F.3d 708, 711 (7th Cir. 2009)(holding that requiring the defendant to sign an appeal waiver would avoid "expense and uncertainty" on appeal); United States v. Newson, 515 F.3d 374, 378 (5th Cir. 2008)(holding that the government's interests under § 3E1.1 encompass not only the government's time and effort at prejudgment stage but also at post-judgment proceedings).

In contrast, the Fourth Circuit has held that a defendant's refusal to sign an appellate waiver is not a legitimate reason for the government to withhold a § 3E1.1(b) motion.  See United States v. Divens, 650 F.3d 343, 348 (4th Cir. 2011) (stating that "the text of § 3E1.1(b) reveals a concern for the efficient allocation of trial resources, not appellate resources" [emphasis in original]); see also United States v. Davis, No. 12-3552, slip op. at 5, F.3d (7th Cir., April 9, 2013) (Rovner, J., concurring) ("insisting that [the defendant] waive his right to appeal before he may receive the maximum credit under the Guidelines for accepting responsibility serves none of the interests identified in section 3E1.1"). The majority in Davis called for the conflict to be resolved, stating: "Resolution of this conflict is the province of the Supreme Court or the Sentencing Commission."  Davis, slip op. at 3, F.3d at (per curiam).  The Second Circuit, stating that the Fourth Circuit's reasoning in Divens applies "with equal force" to the defendant's request for an evidentiary hearing on sentencing issues, held that the government may not withhold a § 3E1.1 motion based upon such a request. See United States v. Lee, 653 F.3d 170, 175 (2d Cir. 2011).

The PROTECT Act added Commentary to § 3E1.1 stating that "[b]ecause the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing."  See § 3E1.1, comment. (n.6).  The PROTECT Act also amended § 3E1.1(b) to provide that the government motion state, among other things, that the defendant's notification of his intention to enter a plea of guilty permitted "the government to avoid preparing for trial and … the government and the court to allocate their resources efficiently …".

In its study of the PROTECT Act, the Commission could discern no congressional intent to allow decisions under § 3E1.1 to be based on interests not identified in § 3E1.1.  Furthermore, consistent with Divens and the concurrence in Davis, the Commission determined that the defendant's waiver of his or her right to appeal is an example of an interest not identified in § 3E1.1.  Accordingly, this amendment adds an additional sentence to the Commentary stating that "[t]he government should not withhold such a motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal."

Amendment 775.

## ANALYSIS

First, because rule 11(f) of the Federal Rules of Criminal Procedure and rule 410 of the

Federal Rules of Evidence prohibit the admission of statements made during plea negotiations

only when those statements are offered against the defendant, those rules do not bar Villaba from

offering the statement that the United States made during plea negotiations. Second, the United States abused its discretion when it refused to move for a 1-level adjustment of Villaba's offense level under § 3E1.1(b). Section 3E1.1(b) permits the United States to withhold such a motion only when the defendant forces the United States to prepare for trial; because the United States did not prepare for trial beyond litigating Villaba's suppression motion, it improperly withheld the § 3E1.1(b) motion. Consequently, the Court sustains the Objection and orders the United States to move for a 1-level adjustment under § 3E1.1(b).

I.    **RULE 11(F) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE AND RULE 410 OF THE FEDERAL RULES OF EVIDENCE DO NOT BAR VILLABA FROM OFFERING THE UNITED STATES' STATEMENTS FROM THE SEPT. 11, 2013, E-MAIL.**

The Court may consider the September 11, 2013, e-mail from Mr. Mysliwiec to Mr. Crow. The United States argues that rule 11 of the Federal Rules of Criminal Procedure prohibits the Court from considering its statement in the Sept. 11, 2013, e-mail. See Sept. 5, 2014, Letter at 1. The United States asserts that the policy reason for such a rule is clear: "[B]y using parties' statement or positions in plea negotiations against them, the Court would discourage full and fair plea negotiations, instead encouraging parties to take unreasonable or guarded positions in negotiations that would reduce the effectiveness of the plea bargaining process." Sept. 5, 2014, Letter at 1.

Rule 11(f) of the Federal Rules of Criminal Procedure and rule 410 of the Federal Rules of Evidence govern the admissibility of statements made during plea negotiations. Rule 11(f) states: "The admissibility . . . of a plea, plea discussion, and any related statement is governed by Federal Rule of Evidence 410." Fed. R. Crim. P. 11(f). Rule 410 provides:

**Pleas, Plea Discussions, and Related Statements**

    **(a)**    **Prohibited Uses.**  In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:

        (1)    a guilty plea that was later withdrawn;

        (2)    a nolo contendere plea;

        (3)    a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or

        (4)    a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

Fed. R. Evid. 410.

As an initial matter, the Federal Rules of Evidence -- except for the rules on privileges -- do not apply to sentencing.  See Fed. R. Evid. 1101 ("These rules -- except those on privilege -- do not apply to . . . sentencing.").  Consequently, rule 410 does not bar the Court from considering the Sept. 11, 2014, e-mail in determining sentencing issues.  Moreover, even if rule 410 applied to sentencing issues, it would not prevent the Court from considering the Sept. 11, 2014, e-mail.  Rule 410 bars statements made during plea negotiations only when they are offered "against the defendant" -- it does not prohibit the defendant from offering any statements that he or she or the United States made during plea negotiations.  Fed. R. Evid. 410.  In United States v. Mezzanatto, 513 U.S. 196 (1995), the Supreme Court of the United States reached the same conclusion, stating that rule 410 of the Federal Rules of Evidence and rule 11(e)(6) of the Federal Rules of Criminal Procedure -- the predecessor to rule 11(f) --

    create, in effect, a privilege of the defendant, and, like other evidentiary privileges, this one may be waived or varied at the defendant's request.  The Rules provide that statements made in the course of plea discussions are

> inadmissible against the defendant, and thus leave open the possibility that a defendant may offer such statements into evidence for his own tactical advantage.

United States v. Mezzanatto, 513 U.S. at 205 (citation omitted)(internal quotation marks omitted).  Because Villaba, and not the United States, is offering the statement in the electronic mail transmission, even if rule 410 applied, it would not bar the Court from considering the Sept. 11, 2014, e-mail in ruling on the Objection.

## II. THE UNITED STATES ABUSED ITS DISCRETION WHEN IT REFUSED TO MOVE FOR A § 3E1.1(B) ADJUSTMENT.

The United States abused its discretion when it refused to move for a § 3E1.1(b) adjustment.  Villaba contends that the United States' refusal to file a § 3E1.1 motion was in retaliation for invoking his constitutional right to file a motion to suppress -- in other words, the refusal was not related to a legitimate government purpose.  In support of his argument, Villaba cites United States v. Vance.  In that case, although the defendant promptly pled guilty after losing his suppression motion, the district court refused to give him a 1-level adjustment under § 3E1.1(b), because he forced the United States to expend resources litigating his suppression motion.  See 62 F.3d at 1157.  In an opinion that the Honorable Andrew J. Kleinfeld, United States Circuit Judge for the United States Court of Appeals for the Ninth Circuit, authored, and Judge Thompson joined, the Ninth Circuit disagreed.  See 62 F.3d at 1157.  The Ninth Circuit explained that "[t]he amount of preparation by a prosecutor, and the amount of court time which must be scheduled, are far greater for trial than for a motion to suppress."  62 F.3d at 1157.  The Ninth Circuit further observed: "The guidelines do not mean 'motions' where they say 'trial'" in § 3E1.1(b).  62 F.3d at 1157 (quoting U.S.S.G. § 3E1.1(b)).

The Tenth Circuit reached a similar conclusion in United States v. Marquez.  In that case, the defendant -- Guadalupe Marquez -- told the United States of his intent to plead guilty

immediately after he lost his suppression motion and eight days before trial.  See 337 F.3d at 1212.  The district court denied the third-level reduction under § 3E1.1(b),[6] because Marquez entered his plea "on the eve of trial" and "only after a lengthy suppression hearing which required the attendance of all but one of the government's witnesses."  337 F.3d at 1211.

On appeal, the United States argued that the district court's denial of the § 3E1.1(b) adjustment was justified, because the United States prepared for trial while litigating Marquez' pretrial motions.  See 337 F.3d at 1212.  In an opinion that the Honorable Paul J. Kelly, Jr., United States Circuit Judge for the Tenth Circuit, authored, and the Honorable Stephanie K. Seymour, United States Circuit Judge for the Tenth Circuit, and the Honorable Milton I. Shadur, United States District Judge for the Northern District of Illinois, sitting by designation, joined, the Tenth Circuit disagreed.  See 337 F.3d at 1211.  The Tenth Circuit explained that "one obvious problem" with the United States' argument is that "it could conceivably deprive a defendant of a [§ 3E1.1(b)] reduction . . . even when the hearing, and subsequent notification of intent to plead guilty, occurred several months prior to the trial date."  337 F.3d at 1212.  The Tenth Circuit added that,

> preparation for a motion to suppress is not the same as preparation for a trial. Even where, as here, there is substantial overlap between the issues that will be raised at the suppression hearing and those that will be raised at trial, preparation for a motion to suppress would not require the preparation of voir dire questions, opening statements, closing arguments, and proposed jury instructions, to name just a few examples.  Consequently, we hold that where a defendant has filed a non-frivolous motion to suppress, and there is no evidence that the government engaged in preparation beyond that which was required for the motion, a district court may not rely on the fact that the defendant filed a motion to suppress requiring a "lengthy suppression hearing" to justify a denial of the third level reduction under § 3E1.1(b)(2).

---

[6]United States v. Marquez applied the prior version of § 3E1.1(b), under which the sentencing court, and not the United States, had the discretion to award a defendant the § 3E1.1(b) adjustment.

United States v. Marquez, 337 F.3d at 1212.  Accordingly, the Tenth Circuit held that the district court abused its discretion when it denied the § 3E1.1(b) adjustment.  See 337 F.3d at 1213.

The United States argues that United States v. Vance and United States v. Marquez are no longer good law, because they applied "a version of the Sentencing Guidelines that is no longer in effect."  Memo. at 3.  The United States points out that, after those cases were decided, Congress amended § 3E1.1(b) to explicitly require a motion from the United States for the adjustment to be granted.  See Memo. at 3.

The United States argues that it can now refuse to file a § 3E1.1(b) motion so long as its refusal is: (i) rationally related to a legitimate government interest; and (ii) not animated by an unconstitutional motive.  See Sept. 5, 2014, Letter at 2 (citing United States v. Salas, 756 F.3d at 1204).  In effect, the United States asserts that it has the same discretion under § 3E1.1(b) as it does under § 5K1.1.  See Sept. 5, 2014, Letter at 2.  The United States argues that, because its refusal to file a § 3E1.1(b) motion was rationally related to the legitimate government interest in preserving its resources, and not animated by an unconstitutional motive, it was permissible.  See Sept. 5, 2014, Letter at 2.  The Court disagrees.

As an initial matter, the Court must determine the proper standard for evaluating whether the United States has properly withheld a § 3E1.1(b) motion.  Before 2003, § 3E1.1(b) read:

> If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps: (1) timely providing complete information to the government concerning his own involvement in the offense; or (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, decrease by an additional 1 level.

U.S.S.G. § 3E1.1(b)(2007).   In 2003, Congress passed the Prosecutorial Remedies and Other

Tools to end the Exploitation of Children Today Act of 2003, Pub. L. 108-21, 117 Stat. 650

("PROTECT Act"), which amended § 3E1.1(b) in the following way (with the underline

indicating additions and the strikethrough indicating deletions):

> If the defendant qualifies for a decrease under subsection (a), the offense level
> determined prior to the operation of subsection (a) is level 16 or greater, and upon
> motion of the government stating that the defendant has assisted authorities in the
> investigation or prosecution of his own misconduct by ~~taking one or more of the
> following steps: (1) timely providing complete information to the government
> concerning his own involvement in the offense; or (2)~~ timely notifying authorities
> of his intention to enter a plea of guilty, thereby permitting the government to
> avoid preparing for trial and permitting the government and the court to allocate
> ~~its~~ their resources efficiently, decrease the offense level by an additional 1 level.

U.S.S.G. § 3E1.1(b).

After Congress passed the PROTECT Act, circuit courts were split about the significance

of the PROTECT Act's amendment of § 3E1.1(b).   The majority of circuit courts -- the First,

Fifth, Seventh, Ninth, and Tenth Circuits -- held that the United States' discretion in withholding

a § 3E1.1(b) motion was akin to its nearly unfettered discretion under § 5K1.1.   See, e.g., United

States v. Johnson, 581 F.3d 994, 1001 (9th Cir. 2009)("[A] prosecutor is afforded the same

discretion to file an acceptance of responsibility motion for a third-level reduction under section

3E1.1(b) as that afforded for the filing of a substantial assistance motion under section 5K1.1."

(internal quotation marks omitted)); United States v. Beatty, 538 F.3d 8, 15 (1st Cir.

2008)("[T]he revised [3E1.1(b)] gives the government discretion -- akin to its discretion under

the substantial assistance provision of the guidelines . . .  to determine whether to file a such a

motion."); United States v. Newson, 515 F.3d 374, 378 (5th Cir. 2008)(holding that, similar to

the United States' discretion under § 5K1.1, the United States can withhold a § 3E1.1(b) motion

so long as it does not act irrationally or base its decision on an unconstitutional motive); United

States v. Deberry, 576 F.3d 708, 711 (7th Cir. 2009)("[T]he United States may not base a refusal to file a motion under section 3E1.1(b) on an invidious ground, or . . . on a ground unrelated to a legitimate governmental objective."); United States v. Smith, 422 F.3d 715, 726 (8th Cir. 2005)("[T]he Government's failure to file a § 3E1.1(b) motion must be rationally related to a legitimate governmental end."); United States v. Moreno-Trevino, 432 F.3d 1181, 1186 (10th Cir. 2005)("[L]ike Section 5K1.1, we read Section 3E1.1(b) to confer on the government a power, not a duty, . . . file a motion when a defendant has timely notified prosecutors of an intention to plead guilty."  (internal quotation marks omitted)(citation omitted)).  Under this approach, the United States could withhold a § 3E1.1(b) motion so long as its decision was: (i) not animated by an unconstitutional motive; and (ii) rationally related to a legitimate government interest.  See United States v. Salas, 756 F.3d at 1204; United States v. Moreno-Trevino, 432 F.3d at 1186.  Consequently, those courts held that the United States could withhold a § 3E1.1(b) motion for a variety of reasons -- such as, preserving the United States' resources generally, rather than only its trial resources.  See, e.g., United States v. Johnson, 581 F.3d at 1002 (holding that the "allocation and expenditure of prosecutorial resources for the purposes of defending an appeal is a rational basis" for withholding a § 3E1.1(b) motion); United States v. Moreno-Trevino, 432 F.3d at 1186 (holding that "reinforcing the principle within the criminal community, that prosecutors will file acceptance-of-responsibility motions only for defendants who fully cooperate and intend to abide by their plea agreements, supervised release conditions, and federal law relating to their offenses," is a rational basis for withholding a § 3E1.1(b) motion).

    In United States v. Moreno-Trevino, for example, the defendant -- Miguel Moreno-Trevino -- pled guilty to one count of illegal reentry after deportation.  See 432 F.3d at 1183.

The United States refused to move for a § 3E1.1(b) adjustment, because, when his probation officer reminded him that he could not re-enter the United States without the government's permission, Moreno-Trevino responded: "How else am I going to see my kids?"  432 F.3d at 1183.  On appeal, in an opinion that the Honorable Robert H. Henry, United States Circuit Judge for the Tenth Circuit, authored, and Judges Holloway and O'Brien joined, the Tenth Circuit upheld the United States' decision.  See 432 F.3d at 1183.  The Tenth Circuit explained that, like § 5K1.1, it reads § 3E1.1(b) as conferring on the United States "a power, not a duty," to file a motion when the defendant has timely notified the United States of his intent to plead guilty. 432 F.3d at 1186.  The Tenth Circuit said:

> [T]he same limited authority is available to review the government's decision not to file a Section 3E1.1 motion as is available to challenge similar decisions under Section 5K1.1: a court can review the government's refusal to file a Section 3E1.1(b) motion and grant a remedy if it finds the refusal was (1) animated by an unconstitutional motive, or (2) not rationally related to a legitimate government end.

United States v. Moreno-Trevino, 432 F.3d at 1186 (internal quotation marks omitted). The Tenth Circuit upheld the United States' decision, because it was: (i) not motivated by an unconstitutional motive; and (ii) rationally related to its legitimate interest in "reinforcing the principle within the criminal community, that prosecutors will file acceptance-of-responsibility motions only for defendants who fully cooperate and intend to abide by their plea agreements, supervised release conditions, and federal law relating to their offenses."  432 F.3d at 1187.

By contrast, a minority of circuits -- the Second and Fourth -- held that the United States' discretion to withhold a § 3E1.1(b) motion is much more limited than under § 5K1.1.  See, e.g., United States v. Lee, 653 F.3d 170, 174 (2d Cir. 2011); United States v. Divens, 650 F.3d 343 (4th Cir. 2011).   Under those cases' approach, the United States can only refuse to file a § 3E1.1(b) motion if the timing of the defendant's guilty plea forced the United States to prepare

for trial.   In United States v. Divens, for example, the United States withheld a § 3E1.1(b)

motion, because the defendant -- Lashawn Divens -- refused to file an appellate waiver as part of

his plea agreement.   See 650 F.3d at 344.   At Divens' sentencing hearing, the United States

explained that its refusal was "rationally related to the purposes of the guidelines," because it

allowed the United States to avoid defense of "a complete appeal" and "allocate its resources to

other matters."   650 F.3d at 344 (internal quotation marks omitted).   On appeal, in an opinion

that the Honorable Diana G. Motz, United States Circuit Judge for the Fourth Circuit, authored,

and Judges Gregory and Shedd joined, the Fourth Circuit disagreed.   See 650 F.3d at 344.

The Fourth Circuit explained:

> [Section] 3E1.1(b) simply does not require that a defendant provide the
> prosecution with the type of assistance that might reduce the "expense and
> uncertainty" attendant to an appeal.   Instead, § 3E1.1(b) provides that a defendant
> earns an additional one-level reduction by providing the government one specific
> form of assistance, i.e. by "timely notifying authorities of his intention to enter a
> plea of guilty."   Id.; see Webster's Third New Int'l Dictionary 307 (1993)
> (defining "by" as "through the means or instrumentality of").   Similarly,
> although § 3E1.1(b) subsequently identifies general interests -- resource allocation
> and trial avoidance -- the syntax of the guideline dictates that the furtherance of
> these interests must again derive from this same single source: the defendant's
> "timely notif[ication of] authorities of his intention to enter a plea of guilty."   This
> is so because the word "thereby" is defined as "by that means," Webster's Third
> New Int'l Dictionary 2372 (1993) (emphasis added), and in this case "that" refers
> back to the description in the previous clause of timely notification.
>
> Section 3E1.1(b) thus instructs the Government to determine simply
> whether the defendant has "timely" entered a "plea of guilty" and thus furthered
> the guideline's purposes in that manner.   It does not permit the Government to
> withhold a motion for a one-level reduction because the defendant has declined to
> perform some other act to assist the Government.   Certainly, "timely" entry of a
> "plea of guilty" does not require the execution of an appellate waiver; rather it
> entails only an unqualified "confession of guilt in open court."   Black's Law
> Dictionary 1152 (6th ed. 1990).   Here, Divens timely entered an unqualified
> "confession of guilt in open court."   That he also refused to assist the prosecution
> in other ways does not deprive him of the additional one-level reduction.
>
> Furthermore, the text of § 3E1.1(b) reveals a concern for the efficient
> allocation of trial resources, not appellate resources.   The guideline specifies that

the guilty plea must enable the "government and the court to allocate their resources efficiently." U.S.S.G. § 3E1.1(b).  The context surrounding the term "the court" leaves little doubt that the term refers to the district court, not an appellate court.  See U.S.S.G. § 3E1.1(b)(requiring the defendant to "permit[] the government to avoid preparing for trial").  Had Congress also intended to conserve appellate court resources, it would have referred to "courts," not "the court."  The commentary confirms this conclusion.  See id. cmt. 2 (explaining that the reduction is intended to relieve the Government of meeting "its burden of proof at trial"), cmt. 5 (noting that the "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility"), cmt. 6 (recognizing defendant must "notif[y] authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the court may schedule its calendar efficiently").  In sum, neither the text of, nor commentary to, § 3E1.1(b) permits the Government to withhold a § 3E1.1(b) motion on the basis of its interest in conserving appellate resources

United States v. Divens, 650 F.3d at 348-49 (citations omitted)(emphases in United States v. Divens but not quoted sources).

The Fourth Circuit said that, although its holding was not in line with other circuits, those circuits disregarded § 3E1.1(b)'s commentary and instead relied solely on the fact that Congress amended § 3E1.1(b) with the PROTECT Act to add the government-motion requirement.  See 650 F.3d at 347.  In the Fourth Circuit's view, nothing in the PROTECT Act demonstrated that Congress intended the United States to have the same discretion to withhold a § 3E1.1(b) motion as it does to withhold a § 5K1.1 motion.  See 650 F.3d at 347.  The Fourth Circuit pointed out that, although Congress could have amended § 3E1.1(b)'s Application Notes so that they conformed to § 5K1.1's Application Notes, it did not do so.  See 650 F.3d at 347.  Consequently, the Fourth Circuit determined that it could not agree with the other circuits that Congress' addition of the government-motion requirement reveals an intent to confer upon the United States the same discretion under § 3E1.1(b) as under § 5K1.1.  See 650 F.3d at 347.

The Second Circuit reached a similar conclusion in United States v. Lee.  In that case, the United States withheld a § 3E1.1(b) motion because the defendant -- Chris Lee -- forced the

United States to conduct a hearing under <u>Fatico v. United States</u>, 603 F.2d 1053 (2d Cir. 1979)("<u>Fatico</u>").[7]  <u>See</u> <u>United States v. Lee</u>, 653 F.3d at 173.  At the sentencing hearing, the United States explained that preparing for the <u>Fatico</u> hearing involved multiple witnesses and "was akin to preparing for trial."  653 F.3d at 173.  In an opinion that the Honorable Denny Chin, United States Circuit Judge for the Second Circuit, wrote, and the Honorable B.D. Parker, United States Circuit Judge for the Second Circuit, and the Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation, joined, the Second Circuit held that the United States' refusal was based on an unlawful reason.  <u>See</u> 653 F.3d at 173.

The Second Circuit asserted that § 3E1.1(b)'s plain language refers only to the resources that the United States saves when the defendant's timely guilty plea "permits the government to avoid preparing <u>for trial</u>."  653 F.3d at 174 (quoting U.S.S.G. § 3E1.1(b))(internal quotation marks omitted)(emphasis in original).  The Second Circuit said that, because a <u>Fatico</u> hearing is not a trial, the United States cannot withhold a § 3E1.1(b) motion when a defendant forces it to conduct one.  <u>See</u> 653 F.3d at 174.  The Second Circuit argued that, moreover, § 3E1.1(b)'s Application Notes similarly refer only to the United States' ability "to determine whether the defendant has assisted authorities in a manner that avoids preparing <u>for trial</u>," and do not mention the resources saved when the United States does not have to prepare for a <u>Fatico</u> hearing or other proceeding.  653 F.3d at 174 (quoting U.S.S.G. § 3E1.1(b), Application Note 6)(internal quotation marks omitted)(emphasis in original).

---

[7]"A '<u>Fatico</u>' hearing is a sentencing hearing at which the prosecution and the defense may introduce evidence relating to the appropriate sentence."  <u>United States v. Lohan</u>, 945 F.2d 1214, 1216 (2d Cir. 1991).

The Honorable Ilana K. Rovner, United States Circuit Judge for the Seventh Circuit, agreed with the Fourth and Second Circuits' approach in her concurring opinion in United States v. Davis, 714 F.3d 474 (7th Cir. 2013)(Rovner, J., concurring).  In that case, the Seventh Circuit upheld the United States' refusal to file a § 3E1.1(b) motion, because the defendant did not sign an appellate waiver as part of his plea agreement.  See 714 F.3d at 475.  In an opinion that the Honorable Richard J. Posner, Chief United States Circuit Judge for the Seventh Circuit, authored, and Judge Manion joined, the Seventh Circuit explained that, under its prior decision in United States v. Deberry, the United States has the same discretion under § 3E1.1 as under § 5K1.1.  See 714 F.3d at 475.  Judge Posner explained that, in short, the United States has discretion to withhold a § 3E1.1(b) motion for any reason that does not violate the Constitution.  See 714 F.3d at 475.  Judge Posner concluded that, because the United States' reason for withholding the motion was not unconstitutional, it did not abuse its discretion.  See 714 F.3d at 475.

In her concurrence, Judge Rovner acknowledged that the Seventh Circuit was bound by its prior decision in United States v. Deberry, but wrote separately to explain why the United States' discretion under § 3E1.1(b) is more limited than the Seventh Circuit recognized in that decision.  See 714 F.3d at 477.  Judge Rovner said that, by specifically outlining what conduct warrants an adjustment, § 3E1.1(b) stands in stark contrast to § 5K1.1, which supplies no meaningful standard through which the United States or a district court can determine whether a defendant has provided substantial assistance in the investigation or prosecution of another person.  See 714 F.3d 477-78.  Instead, Judge Rovner argued, the absence of such a standard caused the Supreme Court to conclude in Wade v. United States, 504 U.S. 181 (1992), that, under § 5K1.1, the United States is constrained only by its obligation not to engage in invidious

discrimination and to rely on a rationale that is unrelated to a legitimate government objective. See United States v. Davis, 714 F.3d at 477-78 (citing Wade v. United States, 504 U.S. at 185-86).    Judge Rovner stated that, by citing both the conduct -- i.e., the defendant's timely announcement of his or her intent to plead guilty -- and the corresponding benefit -- i.e., relieving the government of the need to prepare for trial and clearing the court's calendar -- which merits an adjustment, § 3E1.1(b) places far more significant limits on the government's authority than § 5K1.1 does.   See 714 F.3d at 478.

Judge Rovner pointed out that § 3E1.1(b) says nothing about a defendant's willingness to waive his or her right to appeal, or the interests that such a waiver serves.   See 714 F.3d at 478. Judge Rovner stated that § 3E1.1(b) and its Application Notes do not speak to the universe of acts which might ease the United States' or the judiciary's burden, or which promote the efficient resolution of criminal cases.   See 714 F.3d at 478.   In Judge Rovner's view, § 3E1.1(b) and its Application Notes focus "explicitly and exclusively on avoiding the need to prepare for trial." 714 F.3d at 478.   Judge Rovner thus concluded that the United States abuses its discretion when it withholds a § 3E1.1(b) motion solely because the defendant refused to sign an appellate waiver.   See 714 F.3d at 478.

On November 1, 2013, the Sentencing Commission clarified under what circumstances the United States may withhold a § 3E1.1(b) motion.   See Amendment 775.   The Sentencing Commission rejected the majority approach, stating that it could "discern no congressional intent to allow decisions under § 3E1.1 to be based on interests not identified in § 3E1.1."   Amendment 775.   The Sentencing Commission said that, consistent with the Fourth Circuit's opinion in United States v. Divens and Judge Rovner's concurrence in United States v. Davis, it had determined that "the defendant's waiver of his or her right to appeal is an example of an interest

not identified in § 3E1.1(b)."  Amendment 775 (citing United States v. Divens, 650 F.3d at 348 ("[T]he text of § 3E1.1(b) reveals a concern for the efficient allocation of trial resources, not appellate resources."); United States v. Davis, 714 F.3d at 476 (Rovner, J., concurring)("[I]nsisting that [the defendant] waive his right to appeal before he may receive the maximum credit under the Guidelines for accepting responsibility serves none of the interests identified in section 3E1.1.")).  The Sentencing Commission also explained: "The Second Circuit, stating that the Fourth Circuit's reasoning in Divens applies with equal force to the Defendant's request for an evidentiary hearing on sentencing issues, held that the government may not withhold a § 3E1.1 motion based upon such a request."  Amendment 775 (citing United States v. Lee, 653 F.3d at 175).  Accordingly, the Sentencing Commission added the following sentence to Application Note 6: "The government should not withhold such a motion based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal."  Amendment 775.

The Sentencing Commission's explanation for Amendment 775 demonstrates that the PROTECT Act left intact § 3E1.1(b)'s substantive standard -- i.e., that a defendant is entitled to a § 3E1.1(b) adjustment when his timely guilty plea allows the government to avoid preparing for trial.  Accordingly, contrary to the United States' contentions, the PROTECT Act did not replace that standard with § 5K1.1's more deferential standard.  It appears that the cases that the United States cites which followed the majority approach -- including United States v. Salas and United States v. Moreno-Trevino and its progeny -- are no longer good law.

The Court concludes that having to litigate a suppression motion is not a proper basis for withholding a § 3E1.1(b) motion.  Just as § 3E1.1(b) and its Application Notes do not identify conserving appellate resources as a proper basis for withholding a § 3E1.1(b) adjustment, they

also do not identify litigating suppression motions -- or pretrial motions in general -- as a proper basis for withholding such an adjustment.   Section 3E1.1(b)'s language is clear: "[T]he defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently . . . ."   U.S.S.G § 3E1.1(b)(emphasis added).   Either Congress or the Sentencing Commission could have amended § 3E1.1(b) to say "thereby permitting the government to avoid litigating pretrial motions or preparing for trial," but neither did so. Similarly, Application Note 6 to § 3E1.1 states:  "[T]he defendant must have notified authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently." U.S.S.G. § 3E1.1(b), Application Note 6.  Again, either Congress or the Sentencing Commission could have amended Application Note 6 to say:  "[T]he defendant must have notified authorities of his intention to enter a plea of guilty at a sufficiently early point in the process so that the government may avoid litigating pretrial motions or preparing for trial and the court may schedule its calendar efficiently."   Neither did so.   Consequently, the United States' interpretation would require the Court to read additional language either into the Application Notes to § 3E1.1 or into § 3E1.1 itself.

The United States' proposed rule -- under which it could withhold a § 3E1.1(b) motion whenever it conducts the majority of work necessary to prepare for trial while litigating suppression motion -- fares no better.  The United States argues that, because of the nature of this case, it did "the vast majority of the work" necessary to prepare for trial in order to prepare for the suppression hearing.  Sept. 5, 2014, Letter at 3.  Specifically, the United States notes that

anything else it would have to do to prepare for trial "pales in comparison to the hours . . . spent with the police witnesses, their reports, and the video evidence in this case in preparing for the suppression hearing."  September 5, 2014, Letter at 3.  The United States explained that, to go to trial after litigating the motion to suppress, it would only have had to: (i) file its expert notice for its chemist; (ii) subpoena the chemist; (iii) file proposed jury instructions; (iv) show up and select a jury; and (v) present the same evidence that it had presented at the suppression hearing.  See Oct. 8, 2014, Tr. at 28:19-29:1 (Mysliwiec).  The United States argues that, because it had to prepare for trial to litigate the Motion to Suppress, it properly withheld a § 3E1.1(b) motion.  The Court disagrees for four reasons.

First, litigating a suppression motion is not the same as preparing for trial.  The United States concedes that it did not prepare for trial beyond that which was required for the Motion to Suppress.  It did not file proposed jury instructions, proposed jury forms, or motions in limine; it did not conduct voir dire or choose a jury; it did not file witness or exhibits lists; nor did it write an opening statement or closing argument.  In short, the work that the United States did to litigate the Motion to Suppress was a far cry from the work that it would have done to prepare for trial.

In United States v. Marquez, Judge Kelly, while applying the pre-PROTECT Act version of § 3E1.1(b) -- albeit to a district court rather than to the United States -- rejected an identical argument.  See 337 F.3d at 1212.  Noting that the "preparation for a motion to suppress is not the same as preparation for trial," Judge Kelly held that having to litigate a suppression motion was not a proper basis for withholding a § 3E1.1(b) adjustment.  337 F.3d at 1212.  Judge Kelly explained:

> Even where, as here, there is substantial overlap between the issues that will be
> raised at the suppression hearing and those that will be raised at trial, preparation

for a motion to suppress would not require the preparation of voir dire questions, opening statements, closing arguments, and proposed jury instructions, to name just a few examples.

United States v. Marquez, 337 F.3d at 1212.  Judge Kelly also expressed concern that allowing a district court to withhold a § 3E1.1(b) motion anytime that the United States conducted some trial preparation to litigate a suppression motion, "could conceivably deprive a defendant of a [§ 3E1.1(b)] reduction . . . even when the hearing, and subsequent notification of intent to plead guilty, occurred several months prior to the trial date."  337 F.3d at 1212.  This case presents the exact scenario about which Judge Kelly was concerned.  Unlike Marquez, who accepted the United States' plea offer only eight days before trial, Villaba accepted the United States' plea offer when trial was still likely over a year away.  Thus, withholding a § 3E1.1(b) adjustment in this case was even less justified than in United States v. Marquez.  Consequently, United States v. Marquez -- to the extent that it still good law -- indicates that having to prepare for trial to litigate a suppression motion is not a proper basis for withholding a § 3E1.1(b) motion.

Second, the rule that the United States proposes would be difficult to apply.  Litigating suppression motions inherently involves some level of trial preparation.  When the United States represents that it did all or most of the work that it would do for trial while litigating a suppression motion, the Court is skeptical, but, in the end, does not know whether the United States' representations are accurate or not.  Some attorneys do a considerable amount of trial preparation while litigating suppression motions, others do little to none.  Some lawyers prepare a lot for trial even after a thorough suppression hearing; some not so much.  It is very difficult for the Court to say -- when the United States has gone through a suppression hearing but not filed anything for trial -- to what extent the United States prepared for trial and whether that work constitutes a majority of the work that the United States would have to do for trial.  If the Court

were to adopt the United States' proposed rule, the results among cases are likely to be contradictory, inconsistent, and hard to reconcile.  The United States' proposed rule is a blurry one that lends itself to unprincipled and unpredictable application, bringing uncertainty to the plea process and encouraging litigation.

Third, in applying the United States' rule, the Court's decision would be heavily dependent on the United States' representations about what it has done and about its work habits.  There is little way to check or refute those representations.  In the end, the Court's analysis, if it adopts the United States' rule, is that its final decision is a comment on the veracity of the United States' representations: yes, the Court agrees you have done most of the work necessary for trial, or no, the Court does not believe you have done most of the work.  The subjectivity of the United States' proposed analysis -- and the lack of an accompanying clear, reliable, or readily usable standard -- counsels against adopting it.

Fourth, the Court sees no reason to enact a rule that gives prosecutors even greater power in plea negotiations than they already have without a clearer indication that such was Congress' or the Sentencing Commission's intent.  The Honorable Robert H. Jackson, former Associate Justice of the United States Supreme Court and Attorney General of the United States, once remarked that "[t]he prosecutor has more control over life, liberty, and reputation than any other person in America."  Robert H. Jackson, The Federal Prosecutor, 31 J. Crim. L. & Criminology 3, 3 (1940).  Although Justice Jackson wrote that line in 1940, prosecutors' authority has grown exponentially in the intervening years.  While plea bargains accounted for the resolution of only eighty percent of all criminal cases in 1980, the Sentencing Guidelines, coupled with mandatory minimums, have led to the virtual extinction of jury trials in federal criminal cases today.  See Jed. S. Rakoff,  "Why Innocent People Plead Guilty," The New York Review of Books, Nov. 20,

2014, Issue.  Indeed, plea bargains resolved more than ninety-seven percent of federal criminal cases in 2010.  See Rakoff, supra.  In a recent article, the Honorable Jed. S. Rakoff, United States District Judge for the Southern District of New York, notes that the reason for this dramatic decline is that the Sentencing Guidelines, "like the mandatory minimums, provide prosecutors with weapons to bludgeon defendants into effectively coerced plea bargains."  Rakoff, supra.  Judge Rakoff argues that, by creating such incredible pressures to enter into plea bargains, this system appears to have led to a significant number of defendants to plead guilty to crimes they never actually committed:

> For example, of the approximately three hundred people that the Innocence Project and its affiliated lawyers have proven were wrongfully convicted of crimes of rape or murder that they did not in fact commit, at least thirty, or about 10 percent, pleaded guilty to those crimes.  Presumably they did so because, even though they were innocent, they faced the likelihood of being convicted of capital offenses and sought to avoid the death penalty, even at the price of life imprisonment.  But other publicized cases, arising with disturbing frequency, suggest that this self-protective psychology operates in noncapital cases as well, and recent studies suggest that this is a widespread problem. For example, the National Registry of Exonerations (a joint project of Michigan Law School and Northwestern Law School) records that of 1,428 legally acknowledged exonerations that have occurred since 1989 involving the full range of felony charges, 151 (or, again, about 10 percent) involved false guilty pleas.

Rakoff, supra.  In a system that gives prosecutors such unencumbered power throughout the course of a criminal case, there is no sound reason to read any part of the Sentencing Guidelines to grant prosecutors more discretion in sentencing matters than they already have.  Instead, allowing district judges to play a more central role in reviewing prosecutors' refusals to file § 3E1.1(b) motions and requiring such motions where the defendant has timely plead guilty and allowed the United States to avoid preparing for trial, can serve as a check on prosecutors' largely unfettered discretion in sentencing matters.

The United States has also suggested that, if the Court were to require the United States to perform certain trial-preparation tasks to withhold a § 3E1.1(b) motion -- e.g., filing a trial brief or jury instructions -- the United States would simply do those tasks to withhold the motion. See Oct. 8, 2014, Tr. at 29:14-22 (Mysliwiec)("But if I were in a circuit that told me exactly what I would have to do, I would just be able to that after the suppression hearing . . . . I would file my Rule 16 expert notice.  I would subpoena my chemist.").  Perhaps some prosecutors in this District are so eager to tack on a few extra months to a defendant's sentence that they will file jury instructions, trial briefs, and compose cross examinations solely to withhold a § 3E1.1(b) motion, but the Court hopes that -- with the myriad problems that New Mexico faces -- the large majority of federal prosecutors in this District have better things to do with their time. In any event, any check on prosecutors' discretion in this area is better than the current system, which imposes no check at all.  Accordingly, the Court is not convinced that the potential for abuse is a sufficient reason to prohibit the United States from withholding a § 3E1.1(b) motion where the defendant litigates a suppression motion.

The cases that the United States cites are similarly unpersuasive.  In United States v. Salas, the defendant pled guilty only after the district court denied his motion to suppress.  See 756 F.3d at 1206.  The United States refused to file a § 3E1.1(b) motion, because it had already started preparing for trial before Salas pled guilty.  See 756 F.3d at 1206.  Judge Tymkovich began his analysis by distinguishing United States v. Lee and United States v. Divens.  See United States v. Salas, 756 F.3d at 1205.  He noted that, in United States v. Lee, the Second Circuit held that the United States' refusal to file a § 3E1.1(b) motion was based on an unlawful reason, because it was "undisputed that the guilty plea spare the government from preparing for trial."  United States v. Salas, 756 F.3d at 1205 (quoting United States v. Lee, 653 F.3d at

174)(internal quotation marks omitted).  Judge Tymkovich explained that <u>United States v.</u> <u>Divens</u> "concerned the government's failure to file the § 3E1.1(b) motion because the defendant refused to sign an appellate waiver as part of a plea agreement where there was no evidence the government had been forced to prepare for trial or that the appellate waiver would conserve trial resources."  <u>United States v. Salas</u>, 756 F.3d at 1205 (quoting <u>United States v. Divens</u>, 650 F.3d at 347 n.2)(internal quotation marks omitted).  Judge Tymkovich stated:

> Here, in contrast, the government actually began trial preparations.  Two weeks after Salas filed the motion to suppress, the government notified him that, in response to the motion to suppress, the government was beginning trial preparations.  The government never received a response, and the suppression hearing took place six days after the date of the letter.  Nearly one month after the suppression hearing, the district court issued an order denying Salas's motion to suppress.  Nevertheless, three days after the order denying his motion to suppress, Salas filed proposed jury instructions and a proposed verdict form.  The government filed its trial brief three days later.  It was only the day the government filed its trial brief that Salas indicated he wanted to plead guilty.

<u>United States v. Salas</u>, 756 F.3d at 1205.  Judge Tymkovich also pointed out that the United States never received any indication from Salas that it should refrain from or cease its trial preparations: "[I]ndeed, Salas filed jury instructions and a proposed verdict after the suppression order issued and well after he had received notice the government was preparing for trial."  756 F.3d at 1205.  Judge Tymkovich, thus, concluded that the United States' reason for refusing to file the § 3E1.1(b) motion -- <u>i.e.</u>, avoiding litigation and conserving resources -- was rationally related to the legitimate government interest in the efficient allocation of resources.  <u>See United States v. Salas</u>, 756 F.3d at 1205.

The United States concedes -- and the Court agrees -- that <u>United States v. Salas</u> is not controlling here.  <u>See</u> Oct. 8, 2014, Tr. at 20:2 (Mysliwiec).  In addition to the fact that <u>United States v. Salas</u> used the § 5K1.1 approach that the Sentencing Commission rejected in Amendment 775, the circumstances of this case do not align with <u>United States v. Salas</u>' facts.

Unlike in United States v. Salas, where the United States took multiple steps to prepare for trial after litigating the motion to suppress -- i.e., filing proposed jury instructions, a proposed verdict form, and a trial brief -- the United States did not take any steps to prepare for trial after litigating Villaba's Motion to Suppress.  Consequently, United States v. Salas does not dictate a different result.

The United States argues, however, that the Tenth Circuit suggested in United States v. Salas that the United States may withhold the § 3E1.1(b) motion in this case by citing United States v. Drennon.  See Oct. 8, 2014, Tr. at 32:10-24 (Mysliwiec).  In that case, the defendant -- Michael Drennon -- moved to suppress an eyewitness identification.  See 516 F.3d at 161.  After the district court denied his suppression motion and a month before trial, Drennon pled guilty. See 516 F.3d at 161.  At sentencing, the United States refused to file a § 3E1.1(b) motion, because "the large majority of the work to prepare for trial had been done in connection with the suppression hearing."  516 F.3d at 161.  Despite Drennon's objection to the United States' refusal, the district court concluded that it could not grant the adjustment without a motion from the United States.  See 516 F.3d at 161.  The Third Circuit, in an opinion that the Honorable Walter K. Stapleton, United States Circuit Judge for the Third Circuit, authored, and the Honorable Majorie O. Rendell, United States Circuit Judge for the Third Circuit, and the Honorable Joseph E. Irenas, United States District Judge for the District of New Jersey, sitting by designation, joined, upheld the district court's ruling.  See 516 F.3d at 162.  The Third Circuit pointed out that the United States' refusal to file a § 3E1.1(b) motion must pass only constitutional muster -- i.e., the defendant's race, religion, or gender could not have motivated the United States' decision.  See 516 F.3d at 162.  The Third Circuit concluded that the United

States' decision was not motivated by "anything other than a concern for the efficient allocation of the government's resources." 516 F.3d at 162.

The United States contends that, similar to United States v. Drennon, in which "the large majority of the work to prepare for trial had been done in connection with the suppression hearing," 516 F.3d at 161, "the vast majority of the work [that the United States] would need to do to prepare for trial, [it] did for the [suppression hearing]," Sept. 5, 2014, Letter at 3. By stating that the United States' refusal to file a § 3E1.1(b) motion must only pass constitutional muster, however, the Third Circuit used the same approach that the Sentencing Commission rejected in Amendment 775. Consequently, it is no longer good law.

United States v. Membrides, 570 F. App'x 859, 860-61 (11th Cir. 2014)(unpublished), also does not dictate a different result. United States v. Membrides is the only case to apply both the current version of § 3E1.1(b) and the new amendment to Application Note 6 to the United States' refusal to file a § 3E1.1(b) motion because a defendant litigated a suppression motion. In that case, in a per curiam opinion for United States Circuit Judges Wilson, Pryor, and Martin, the Eleventh Circuit explained:

> A defendant is entitled to a one-level reduction pursuant to § 3E1.1(b), if, among other conditions, the government files a motion "stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." U.S.S.G. § 3E1.1(b). Section 3E1.1(b) was recently amended to require a government motion. Amendment 775 to § 3E1.1(b) provides that "[t]he government should not withhold [a § 3E1.1(b) motion] based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal." U.S.S.G. § 3E 1.1(b) cmt. 6.

> Here, the district court did not clearly err when it did not award Membrides a third reduction point under § 3E1.1(b). Membrides was sentenced on December 10, 2013, and therefore the 2013 Guidelines, with Amendment 775, apply. Although the Amendment arguably may allow for judicial review of the

> government's refusal to make a § 3E1.1(b) motion, we have not yet decided under what circumstances, if any, the district court may review the government's decision not to file such a motion. Regardless, however, Membrides's argument fails. While Membrides indicated his intention to plead guilty early on, he stated that he would do so only <u>if</u> he lost his suppression motion. Thus, late in the game, the government had to fully prepare for a two-day suppression hearing. That preparation included preparing law enforcement witnesses to testify about facts similar to those they would testify about at a trial and defeated the purpose of § 3E1.1(b)'s incentive to plead early. By conditioning his guilty plea on the outcome of the suppression hearing, Membrides forced the government and the district court to allocate resources they would not have been required to allocate if Membrides had pleaded guilty outright. This is one of the considerations identified in § 3E1.1, thus even if the Amendment created judicial review, the district court did not clearly err. In similar circumstances before § 3E1.1 was amended, we upheld withholding the one-point reduction when a guilty plea was made on the eve of trial following denial of a motion to suppress, after the government began trial preparation. <u>See</u> <u>United States v. Gilbert</u>, 138 F.3d 1371, 1373-74 (11th Cir. 1998)(per curiam), <u>abrogated on other grounds by</u> <u>United States v. Archer</u>, 531 F.3d 1347 (11th Cir. 2008). That holding remains appropriate despite the Amendment and Membrides therefore cannot benefit from the fact that he pleaded as soon as was practicable give his trial strategy.

<u>United States v. Membrides</u>, 570 F. App'x at 860-61 (alterations in original)(emphasis in original)(citations omitted). By focusing on whether the United States expended resources in general when it had to litigate the defendant's suppression motion -- rather than trial resources in particular -- the Eleventh Circuit made the same mistake as the Third Circuit did in <u>United States v. Drennon</u>. Application Note 6 makes clear that a desire to avoid preparing for trial must motivate the United States' decision to withhold a § 3E1.1(b) motion; whether the United States expended resources generally when the defendant forced it to litigate a suppression motion is irrelevant. Consequently, <u>United States v. Membrides</u> does not dictate a different outcome.

In sum, the Court holds that, because the United States did not perform any trial preparation beyond what was necessary to litigate the Motion to Suppress, it abused its discretion when it withheld a § 3E1.1(b) adjustment. The question remains, however, what the appropriate remedy is in such circumstances. There are three potential remedies: (i) impose the § 3E1.1(b)

adjustment sua sponte; (ii) order the United States to move to impose the adjustment; or (iii) vary from the defendant's Guidelines Range to get to the same place as if the United States had moved for the adjustment.    Ordering the United States to impose the adjustment is the appropriate remedy for three reasons.  First, it is the remedy that the Fourth Circuit suggested in United States v. Divens.  In that case, the Fourth Circuit ended its opinion by stating:  "If the Government cannot provide a valid reason for refusing to move for an additional one-level reduction under U.S.S.G. § 3E1.1(b) and continues to refuse to move for such a reduction, the district court should order the Government to file the motion."  650 F.3d at 350.  Although the Sentencing Commission did not specify a remedy in its explanation of Amendment 775, it also did not reject the Fourth Circuit's remedy after relying so heavily on United States v. Divens.  It stands to reason that, if the Sentencing Commission agreed with the Fourth Circuit's holding, but disagreed with its remedy, it would have said as much in its explanation for Amendment 775. The Sentencing Commission's silence indicates, at the very least, that it has no qualms about such an approach.

Second, ordering the United States to move for a § 3E1.1(b) adjustment is consistent with § 3E1.1(b)'s and its Application Notes' plain language.  Section 3E1.1(b) makes clear that a district court may only decrease the defendant's offense level by 1 additional level "upon motion of the government."  U.S.S.G. § 3E1.1(b).  Application Note 6 is equally clear:

> If the government files such a motion, and the court in deciding whether to grant the motion also determines that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, the court should grant the motion.

U.S.S.G. § 3E1.1(b), Application Note 6.   Neither § 3E1.1(b) nor its Application Notes say anything about a district court's authority to grant a § 3E1.1(b) adjustment sua sponte.   Instead, they both indicate that a district court must order the United States to do so.

Third, and finally, varying from Villaba's Sentencing Guidelines range would be an inappropriate remedy.   The Court has previously said that it must adhere to the following three-step sequence when sentencing a criminal defendant: "[F]irst, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures . . . and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole."   United States v. Valdez, No. CR 10-1919-002, 2014 WL 3377695, at *20-21 (D.N.M. June 20, 2014)(Browning, J.).   In other words, only after correctly applying the relevant Guideline provisions can the Court choose to vary from them in crafting a defendant's sentence.   Varying from a defendant's Guidelines range before determining what that range is would be putting the cart before the horse.   Consequently, the Court finds it hard to believe that the Sentencing Commission would amend § 3E1.1(b) -- and, in doing so, cite a case in which a circuit court recommends ordering the United States to move for a § 3E1.1(b) adjustment -- solely to suggest a basis for a district court to vary from a defendant's Guidelines range before determining what that range is.   Section § 3E1.1(b), its Application Notes, and the Sentencing Commission's explanation for Amendment 775 contain no evidence that either Congress or the Sentencing Commission intended such a strange remedy. Consequently, the Court concludes that ordering the United States to move for a § 3E1.1(b) adjustment is the only remedy that is consistent with the Sentencing Guidelines.

**IT IS ORDERED** that the objection in Defendant Jose Villaba's Sentencing Memorandum, Motion for Downward Departure, and/or Variance and Formal Objection to

Presentence Report, filed February 3, 2014 (Doc. 69), is sustained.  The United States is ordered

to move for a 1-level adjustment under U.S.S.G. § 3E1.1(b).

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
   United States Attorney
Paul Mysliwiec
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

B.J. Crow
Crow Law Firm
Roswell, New Mexico

   *Attorney for the Defendant*