IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.      No. CR 13-0664 JB

JOSE ISRAEL VILLABA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion to Continue Sentencing, filed January 30, 2014 (Doc. 67)("Motion"). The Court held a hearing on February 4, 2014. The primary issue is whether the Court should continue Defendant Jose Israel Villaba's sentencing hearing set for February 4, 2014. First, the Court will deny the Motion insofar as Villaba requests a continuance until either the Congress of the United States approves the United States Sentencing Commission's proposed amendment to U.S.S.G. § 2D1.1 or the amendment goes into effect, because the Court can account for the proposed amendment's effects by imposing a variance, and because continuing every drug-trafficking defendant's sentencing hearing until the amendment goes into effect would create unnecessary congestion in the courts and the local jail system. Second, the Court will grant the Motion insofar as it requests a brief continuance so that the Court may consider Defendant Jose Israel Villaba's Sentencing Memorandum, Motion for Downward Departure and/or Variance and Formal Objection to Presentence Report, filed February 3, 2014 (Doc. 69)("Objection"). Consequently, the Court will grant the Motion in part and deny it in part.

**FACTUAL BACKGROUND**

The Court takes its facts from the Presentence Investigation Report, disclosed December 6, 2013 ("PSR"), that the United States Probation Office ("USPO") prepared.  On February 21, 2013, Drug Enforcement Administration agents encountered Villaba at a Greyhound bus station in Albuquerque, New Mexico.  See PSR ¶ 6, at 3.  DEA agents asked Villaba if they could search his luggage, but Villaba declined.  See id. ¶ 6, at 3.  After subsequent questioning, Villaba allowed the agents to search his luggage.  See id. ¶ 6, at 3.  During the search, the agents discovered 472.4 grams of methamphetamine concealed inside a packaged fire-truck toy.  See id. ¶ 6, at 3.  The agents then placed Villaba under arrest.  See id. ¶ 6, at 3.

**PROCEDURAL BACKGROUND**

On October 3, 2013, Villaba pled guilty to possession with intent to distribute fifty grams or more of a mixture and substance containing methamphetamine under 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B).  See Plea Agreement, filed October 3, 2013 (Doc. 62); Clerk's Minutes for Proceedings Held Before Magistrate Judge Lorenzo F. Garcia, filed October 3, 2013 (Doc. 61).  In the PSR, the USPO gives Villaba a base-offense level of 31.  See PSR ¶ 12, at 4.  The USPO then subtracts 4 levels from Villaba's base-offense level: 2 levels for the minor role that he played in the crime and another 2 levels for Villaba's acceptance of responsibility.  See PSR ¶ 15, at 4; id. ¶ 19, at 5.  The PSR also notes that the United States would not move for an additional 1-level adjustment under U.S.S.G. § 3E1.1(b), because Villaba forced the United States to litigate his suppression motion before he pled guilty.  See PSR ¶ 20, at 5.  On January 2, 2014, the Court scheduled Villaba's sentencing hearing for February 4, 2014.  See Order Continuing Sentencing Hearing, filed January 2, 2014 (Doc. 66).

1. **<u>The Motion.</u>**

Villaba filed the Motion on January 30, 2014.  <u>See</u> Motion at 1.  In the Motion, Villaba asks the Court to continue his February 4, 2014, sentencing hearing for two reasons.  <u>See</u> Motion *passim*.  First, Villaba states that he filed an informal objection to the PSR.  <u>See</u> Motion at 1.  Second, he argues that the Court should wait to sentence him until after the Commission decides whether to amend § 2D1.1.  <u>See</u> Motion at 2-3.  Villaba explains that, on January 9, 2014, the Commission issued a news release entitled "U.S. Sentencing Commission seeks comment on potential reduction to drug trafficking sentences."  Motion ¶ 9, at 2 (quoting U.S. Commission Seeks Comment on Potential Reduction to Drug Trafficking Sentences: Requests Feedback on Proposed Amendments for 2013-14 Amendments Cycle at 1 (January 9, 2014), filed January 30, 2014 (Doc. 67-1)("Press Release"))(internal quotation marks omitted).  According to Villaba, the Press Release states that the proposed amendments to the Guidelines include a reduction in the Guideline levels for federal drug-trafficking offenses.  <u>See</u> Motion ¶ 10, at 2 (citing Press Release at 1).  Villaba asserts that the Commission proposes a 2-level reduction in the Guideline levels for all drugs under § 2D1.1.  <u>See</u> Motion ¶ 11, at 2 (citing Press Release at 1).

Villaba points out that § 2D1.1 applies to his base offense level.  <u>See</u> Motion ¶ 12, at 2.  Villaba says that the Commission will hold a public hearing on the proposed amendment on March 13, 2014, and will likely approve the amendment at that meeting.  <u>See</u> Motion ¶¶ 13-14, at 2.  Villaba asserts that, although the amendment's retroactivity is unclear at this point, the Commission will likely approve retroactivity as it did in the "crack guideline amendments." Motion ¶ 15, at 2.  Villaba explains that, because he would directly benefit from this amendment's passage, and because it would preserve judicial resources for him to not have to pursue post-sentencing remedies under 18 U.S.C. § 3582, he asks the Court to continue his

sentencing until after the March 13, 2014, hearing. See Motion ¶¶ 17-18, at 2; id. ¶¶ 21-22, at 3. Villaba adds that granting the Motion would not prejudice him or the United States, because he is already facing a five-year mandatory minimum sentence and is currently incarcerated. See Motion ¶ 23, at 3. On February 3, 2014, Villaba filed his sentencing memorandum and formal objection to the PSR. See Objection at 1. Among other things, Villaba objects to the United States refusal to file a 1-level adjustment under § 3E1.1(b). Objections *passim*.

### 2. **The Hearing.**

The Court held a hearing on February 4, 2014. See Transcript of Hearing (taken Feb. 4, 2014)("Tr.").[1] There was some initial discussion whether the Court had received the United States' response to the Motion, with the United States saying that it had filed the response and the Court's courtroom deputy, Ms. Wild, explaining that it had not. See Tr. at 4:3-17 (Mysliwiec, Wild, Court). The United States agreed to file its response after the hearing. See Tr. at 18:22-19:9 (Mysliwiec). The United States also indicated that it would file a response to the Objection. See Tr. at 18:12-18 (Mysliwiec).

The hearing was relatively short, with both parties largely reiterating their arguments from the briefing. See Tr. *passim*. Villaba asked the Court to continue his sentencing until hearing until either November -- when the amendment goes into effect -- or May -- when Congress plans to vote on the amendment. See Tr. at 12:20-13:13 (Crow). The Court explained that it did not intend to wait until the new amendment to § 2D1.1 goes into effect to sentence drug-trafficking defendants. See Tr. at 1:19-10:8 (Court, Mysliwiec, Crow). The Court said that it would likely handle the impending amendment along the same lines as it did with regard to

---

[1]The Court's citations to the transcripts of the two hearings refer to the court reporter's original, unedited versions. Any final versions may have slightly different page and/or line numbers.

recency points in United States v. Vazquez-Vazquez, No. CR 10-2380 JB, 2010 WL 4927732 (D.N.M. Nov. 4, 2010)(Browning, J.). See Tr. at 3:11-10 (Court). The Court said that, in other words, if the amendment is inevitable, it could just vary two levels in these cases without continuing those defendants' sentencing hearings until the amendment is formally enacted. See Tr. at 3:15-19 (Court).

The Court asked the United States whether the United States Attorney General had a position on continuing sentencing hearings until the new amendment to § 2D1.1 goes into effect, pointing out that the Commission unanimously approved the amendment and that the Attorney General is a member of the Commission. See Tr. at 6:10-14 (Court). The United States responded that it had not been instructed to ask district judges to sentence defendants based on Guidelines that are not currently in effect. See Tr. at 6:15-23 (Mysliwiec). The United States conceded, however, that it would not be prejudiced if the Court continued Villaba's sentencing hearing, stating that "the worst that would happen would be that my personal funding runs out," and there would likely be a different Assistant United States Attorney handling the case. Tr. at 15:23-16:5 (Mysliwiec).

The parties then addressed whether the impending amendment would likely be retroactive -- with both parties saying that, although the Commission has not explicitly addressed retroactivity, both the Commission and Congress would likely make the amendment retroactive based on what they did with the crack-cocaine Guidelines. See Tr. at 10:9-14:12 (Mysliwiec, Court, Crow). The Court said that it expected the Commission to approve the amendment to § 2D1.1, given its unanimous vote and the United States Department of Justice's position that it would not oppose the amendment. See Tr. at 17:8-16 (Court). The Court explained, however, that it was not inclined to "hold up every sentencing for a year." Tr. at 17:17-18 (Court). The

Court stated that it would likely handle the issue in the same way as when the Commission has previously indicated that it planned to amend the Guidelines -- that is, use a variance to account for the amendment's effect.  See Tr. at 17:18-24 (Court).  The Court concluded that it would grant the Motion to consider the Objection and take into account Villaba's variance arguments, but wanted to promptly reset the sentencing.  See Tr. at 18:1-6 (Court).  Accordingly, the Court granted the Motion in part and denied it in part.

### 3. The Response.

After the hearing, the United States filed its response to the Motion.  See United States' Response in Opposition to Motion to Continue Sentencing, filed February 4, 2014 (Doc. 71)("Response").  In the Response, the United States asks the Court to deny the Motion, and responds to Villaba's two arguments from the Motion and the hearing.  See Response *passim*.  First, the United States asserts that Villaba's objection to the PSR is "without merit."  Response at 1.  The United States points out that the Court may apply the third-level adjustment for timely acceptance of responsibility under § 3E1.1(b) only

> upon motion of the government stating that defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently.

Motion at 1-2 (quoting U.S.S.G. § 3E1.1(b))(internal quotation marks omitted).  The United States explains that it is not filing a § 3E1.1(b) motion, because Villaba forced the United States to litigate his suppression motion, and to attend a "several-hour suppression hearing,"[2] and caused the Court to craft a seventy-one page opinion denying the suppression motion.  Response

---

[2] The courtroom deputy clerk's minutes from the hearing indicate that the suppression hearing lasted approximately two and a half hours.  See Clerk's Minutes Before District Judge James Browning, filed July 29, 2013 (Doc. 37).

at 1-2.  The United States concludes: "Defendant's sentencing need not be delayed to provide extra time to pursue an informal objection that cannot, based on the sentencing guidelines and the record in this prosecution, be granted."  Response at 2.

Second, the United States asserts that the Court should not delay Villaba's sentencing hearing because of Villaba's "desire to be sentenced under some hypothetical future guidelines range that may or may not be adopted some time later this year."  Response at 2.  According to the United States, § 1B1.11 of the Sentencing Guidelines states: "The court shall use the Guideline Manual in effect on the date that the defendant is sentenced."  Response at 2 (quoting U.S.S.G. § 1B1.11)(internal quotation marks omitted).  The United States adds that, if the Court waits until the Sentencing Commission amends § 2D1.1, it would sentence Villaba more than a year after his guilty plea.  See Response at 2.  In the United States' view, such a significant delay would "strain[] limited jail resources, causing other defendants to need to be housed further away from their defense attorneys as they engage in plea negotiations and/or prepare for trial."  Response at 2.  The United States assets that such a delay "is neither required nor appropriate."  Response at 2.

## LAW REGARDING RULE 32 AND GOOD CAUSE

Rule 32(b)(1) of the Federal Rules of Criminal Procedure instructs courts that they "must impose sentence without unnecessary delay."  Fed. R. Crim. P. 32(b)(1).  After the probation officer drafts the presentence report, "[t]he probation officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period."  Fed. R. Crim. P. 32(e)(2).  Parties must, "[w]ithin 14 days after receiving the presentence report, . . . state in writing any objections, including objections to material information, sentencing guideline ranges, and policy

statements contained in or omitted from the report." Fed. R. Crim. P. 32(f)(1).  A "court may, for good cause, change any time limits prescribed in" rule 32 or, "for good cause, allow a party to make a new objection at any time before sentence is imposed." Fed. R. Crim. P. 32(b)(2), (i)(1)(D).  Rule 45 provides courts with authority to extend the time a party has to perform an act for good cause.  See Fed. R. Crim. P. 45(b)(1) ("When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion . . . .").

The United States Court of Appeals for the Tenth Circuit has not adopted a definition for good cause under rule 32.  The Tenth Circuit has, however, adopted a definition for good cause under rule 16 of the Federal Rules of Civil Procedure in relation to the amendments of scheduling orders.  Because both rules use the same phrase -- good cause -- a court is warranted in concluding that Congress intended that the same meaning applies to this phrase in each statute.  Courts generally presume that a drafter of a statute intends identical language in statutes with similar purposes to have the same meaning.  See Merrill Lynch, Pierce, Fenner & Smith v. Dabit, 547 U.S. 71, 85-86 (2006).  Additionally, "[t]he rules of statutory construction apply to the Federal Rules . . . ."  In re Kubler, No. CIV 11-0048, 2012 WL 394680, at 11 (D.N.M. Jan. 25, 2012).  Accord Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)(applying the expressio unius est exclusio alterius canon when interpreting rule 9(b) of the Federal Rule of Civil Procedure); Hillis v. Heineman, 626 F.3d 1014, 1017-18 (9th Cir. 2010)("This same principle of statutory construction applies to interpreting the Federal Rules of Civil Procedure.").

"Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  Advanced Optics Elecs., Inc. v. Robins, 769 F. Supp. 2d 1285, 1313

(D.N.M. 2010)(Browning, J.).   Accord Gerald v. Locksley, No. CIV 10-0721, 2011 WL 3510845, at *13-14 (D.N.M. Aug. 1, 2011)(Browning, J.).  The Tenth Circuit has interpreted rule 16(b) of the Federal Rules of Civil Procedure as imposing a "good cause" standard to untimely motions to amend when a scheduling order governs the case.  Minter v. Prime Equip. Co., 451 F.3d 1196, 1205 n.4 (10th Cir. 2006).  "This requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay."  Minter v. Prime Equip. Co., 451 F.3d at 1205 n.4.

This Court has previously stated that the rule 16(b) good-cause inquiry focuses on the diligence of the party seeking amend the scheduling.  See Walker v. THI of N.M. at Hobbs Ctr., 262 F.R.D. 599, 602-03 (D.N.M. 2009)(Browning, J.); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101, 2009 WL 3672505, at *2-3 (D.N.M. Sept. 29, 2009)(Browning, J.); Trujillo v. Bd. of Educ., Nos. CIV 02-1146, 03-1185, 2007 WL 2296955, at *3 (D.N.M. June 5, 2007)(Browning, J.).

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a).  Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment.  Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.  In other words, this court may "modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension."  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.

Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co., 986 F. Supp. 959, 980 (D.S.C. 1997)(citations omitted), aff'd on other grounds, 129 F.3d 116 (4th Cir. 1997).

In In re Kirkland, 86 F.3d 172 (10th Cir. 1996), the Tenth Circuit dealt with the definition of "good cause" in the context of civil rule 4(j).  The Tenth Circuit noted:

> [W]ithout attempting a rigid or all-encompassing definition of "good cause," it would appear to require at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified" is normally required.

86 F.3d at 175 (emphasis omitted)(internal quotation marks omitted)(quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir. 1987)).  The Tenth Circuit explained that Putnam v. Morris "thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'"  In re Kirkland, 86 F.3d at 175.

## ANALYSIS

The Court will grant the Motion in part and deny it in part.  First, the Court will deny the Motion insofar as it requests the Court to continue the sentencing hearing until either Congress votes on the amendment or the amendment goes into effect.  As the Court explained at the hearing, it does not relish the idea of continuing every drug-trafficking defendant's sentencing hearing until the amendment takes effect, especially given the crush of such cases in the District.[3]  Such a policy would create congestion in the courts and prisons with little to no benefit because the Court can account for the impending amendment by imposing an equivalent variance -- as it did with recency points in United States v. Vazquez-Vazquez.  Consequently, the Court will not continue the sentencing hearing until either Congress votes on the proposed amendment or the amendment goes into effect.

---

[3]In January, 2014, the United States Department of Justice issued a report which said that, although there is a significant nationwide decrease in federal drug prosecutions, the District of New Mexico has climbed the rankings for judicial districts with the highest per capita number of drug prosecutions -- moving from ninth-highest five years ago to second-highest last year. See Federal Drug Prosecutions Fall to Lowest Level in Over 13 Years, TracReports, http://trac.syr.edu/tracreports/crim/347/ (last visited Feb. 25, 2015).

Second, the Court will grant the Motion for a brief continuance so that the Court may consider the Objections and the appropriate variance to impose.  In particular, the Court wants to consider Villaba's arguments regarding the United States' refusal to file a § 3E1.1(b) motion, and give the United States an opportunity to respond to those arguments.  The current sentencing date of February 4, 2014, was simply set by the Court as a routine scheduling matter.  There is nothing magical about the date.  The continuance also does not prejudice either party.  Although the United States argued in the Response that the continuance may "strain[] limited jail resources, causing other defendants to need to be housed further away from their defense attorneys as they engage in plea negotiations and/or prepare for trial," Response at 8, it conceded at the hearing that it would not suffer prejudice if the Court granted the Motion, see Tr. at 15:23-16:5 (Mysliwiec).  As Villaba has stated, he will also not suffer any prejudice from a continuance, because he is facing a mandatory five-year sentence on this conviction, and he is already incarcerated.

After weighing the best interests of the public and of Villaba with the ends of justice, the Court finds that granting the Motion will strike a proper balance between the ends of justice, and the best interests of the public and of Villaba for the reasons stated in the Motion and at the hearing.  The Court will set Villaba's new sentencing hearing for September 3, 2014.  This continuance is sufficient, without being greater than necessary, for the United States and the Court to consider Villaba's arguments regarding the United States' refusal to file a § 3E1.1(b) motion.

**IT IS ORDERED** that: (i) the Motion to Continue Sentencing, filed January 30, 2014 (Doc. 67), is granted; and (ii) the sentencing hearing set for February 4, 2014, is vacated, and rescheduled for September 3, 2014 at 1:30 p.m.

                                                            _____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Paul Mysliwiec
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

B.J. Crow
Crow Law Firm
Roswell, New Mexico

    *Attorney for the Defendant*